Affirmed and Memorandum Opinion filed July 29, 2008








Affirmed and Memorandum Opinion filed July 29, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00484-CR

____________

 

LARRY DAVIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 1090786

 



 

M E M O R A N D U M   O P I N I O N

Appellant,
Larry Davis, appeals his conviction for robbery.  A jury found appellant guilty
and assessed his punishment at twenty years in prison and a $10,000 fine.  On
appeal, he raises four issues:  (1) the evidence is legally insufficient to
uphold his conviction; (2) the evidence is factually insufficient to uphold his
conviction; (3) the trial court erred by denying his motion to suppress his
statements to police; and (4) the trial court erred by denying his motions to
suppress identifications that were the result of improper pretrial procedures. 
We affirm.








BACKGROUND

Priscilla
Maldonado, complainant, testified that she was working at a T-Mobile store on
October 29, 2006, assisting a customer with bill payment, when a black male in
his late thirties entered the store.  The man walked around for a few minutes
before approaching Maldonado to ask the price of an accessory bundle.  She told
him the price and stated that someone would be right with him.  The man then
pulled out a silver handgun, pointed it at Maldonado=s face from a distance of
approximately three feet, and demanded that she give him Aall [the] money.@  Maldonado said that she froze,
started crying, and told the man not to hurt her.  She also testified that she
was afraid the man was going to kill her and that she could not get the
register open because she was in shock.

Maldonado
and Tiffany Deaver, the customer Maldonado had been assisting, both testified
that the man leaned over and grabbed approximately six twenty dollar bills
laying on the counter from the bill payment.  At this point, Deaver backed out
of the store while facing the man.  Maldonado stated that the man then left the
store, taking the money and the accessory pack he had asked her about earlier. 
A co-worker, Myra Cortez, called the police, who arrived around twenty to
thirty minutes after the robbery occurred.

            Houston
Police Officer Cleveland Banks testified that he responded to the robbery call
and interviewed Maldonado.  According to Banks, Maldonado described the robber
as a black male in his thirties, six feet tall, one hundred and fifty pounds,
with black, kinky short hair.  In court, Deaver described the robber as a male,
approximately 5'8" to 5'9", skinny, with indentations in his skin,
and wearing a black shirt, white Ado-rag,@ and dark glasses.  She testified
that she gave the same description to the police officers at the T-Mobile
store.








Houston
Police Officer Steven Lee testified that he heard a robbery in progress call in
his beat while on patrol that day.  He drove the area looking for the suspect,
who had left the T-Mobile store on foot.  According to Lee, the broadcasted
description of the suspect was that of a black male, five feet ten inches to
six feet tall, one hundred and forty to fifty pounds, wearing a black shirt. 
After checking the computer and reading a report of a suspicious black male
hiding in a carport behind an apartment complex within a block or two from
where the suspect was seen running, Lee went to that complex and saw what
appeared to be a black male=s hand Afly over@ a ten to twelve foot fence, as though someone had just
jumped and let go of the fence.

Lee
scaled the fence and observed a black male about ten to fifteen yards away. 
The suspect had on a white undershirt and had something wrapped in a black
shirt in his hand as he ran in an open field.  The suspect was the only person
in the field according to Lee.  After the suspect ran between two houses, Lee
lost sight of him.  Lee then set up a perimeter and waited for K-9 units.  To
Lee=s knowledge, no one entered or exited
the perimeter after it was established and before appellant=s apprehension.

Houston
Police K-9 Officer David Thomas testified that he and another K-9 unit
responded to the scene and divided the search area.  When Thomas and Rudy,
Thomas=s canine partner, reached the second
house on the Street, Rudy attempted to enter some bushes that were six to seven
feet thick.  Thomas took Rudy to the other side of the bushes, where Rudy
entered and discovered a bag and sunglasses.  After Thomas announced on his
radio that he found the items, Rudy re-entered the bushes and made contact with
appellant, who was crouching in the bushes.  After Rudy dragged appellant from
the bushes, appellant was taken into custody by another officer.

Officer
Lee testified that he picked up appellant from the location where he was taken
into custody.  Lee believed that appellant was the same person he had chased
earlier.  Officer Thomas gave Officer Lee a T-Mobile bag and a black shirt. 
The shirt was later returned to appellant at the jail.  Appellant was treated
by EMS personnel at the scene.








According
to Deaver, around twenty-five to thirty minutes after the robbery occurred, she
was taken to identify someone at a location around the corner from the store. 
She stated that when she looked up from the patrol car, she saw appellant about
one car length from her, undergoing treatment by EMS personnel and wearing only
boxers.  She indicated to the officer driving the car that the person being
treated was the person who robbed the T-Mobile store.  She also identified
appellant in court as the person who robbed the T-Mobile store.  On
cross-examination, Deaver further explained that she first saw appellant in the
street being led towards an ambulance, and that she did not know where he was
being brought from.

Maldonado
testified that about an hour after the robbery, she and her co-worker, Cortez,
were taken by Officer Banks to the location where appellant was in custody. 
She noted that although the police wanted to transport her and Cortez
separately, the police let them go together because the women were scared and
did not want to be separated.  According to Maldonado, the moment she and her
co-worker saw appellant, they realized that he was the person who committed the
robbery.  She stated that appellant was no longer wearing a shirt, sunglasses,
or do-rag, but she did see a white shirt with blood on it nearby.  She
identified appellant because of his face and bad skin condition; there was Ano doubt in [her] mind@ that appellant was the person who
robbed the store.  Although Maldonado could not identify appellant in court,
she did positively identify the person in State=s Exhibit #4, a photograph of
appellant taken at the time of the robbery, as the person who committed the
robbery.  Officer Banks testified that both Maldonado and Cortez positively
identified appellant as the person who had robbed the store.








Maldonado
further testified that after identifying appellant, she and Cortez were taken
back to the T-Mobile store, and an officer brought back the accessory pack and
money that had been taken earlier.  She stated that the accessory pack was the
same item that she saw the robber holding in his hand before the robbery
occurred.  On cross-examination, Maldonado acknowledged that appellant was
handcuffed when she identified him to police.  She was not sure if Officer
Banks heard her and her co-worker identify appellant when they first saw him,
as they were sitting behind him in the patrol car.

Officer
Lee stated that after the witnesses made their identifications, he placed
appellant in the backseat of his patrol car.  According to Lee, while in the
backseat of the patrol car,  appellant said, AI didn=t rob nobody.  I never had a gun.  It
was a toy gun.@  Appellant further said he threw the gun into the bushes at one of the
apartment complexes he ran through during the chase.

Houston
Police Officer Colleen Guidry of the Westside Robbery Division testified that
she went to the arrest location, where she met with the arresting and primary
officers, before going to the T-Mobile store to meet with the witnesses. 
Guidry said that Lee gave her eight twenty dollar bills and a cell phone
accessory pack in a bag that came from the T-Mobile store.  When she approached
appellant to introduce herself and tell him he would have an opportunity to
make a recorded statement at the main police station, appellant told her that
the gun was not real and that he would show her where it was located. 
Appellant then directed Guidry and Lee to two different apartment complexes,
but no gun was recovered.  Lee transported appellant to the police station
downtown.

Lee
testified that during the foot chase before appellant=s apprehension, appellant did not
have any difficulty running or appear to be under the influence of anything. 
According to Lee, appellant did appear to be unsteady after the K-9 unit
apprehended him, but he stated that appellant=s condition could have been due to
injuries or heat exhaustion.  Lee did not smell alcohol on appellant.  Guidry
also testified that during her initial contact with appellant, she did not
notice anything that led her to think he was intoxicated.  She noted that
appellant responded to her remarks and was articulate.








According
to Guidry, appellant was wearing a white muscle shirt and pants or shorts when
he was in Lee=s patrol car, and Lee and his partner had appellant=s black shirt and pants that were
taken by EMS personnel when they treated appellant for his dog bite.  Guidry
stated that the only injuries she noted when appellant arrived at the police
station were bandaged fingers on his left hand and a bandage on his right leg,
and that he did not have any injuries consistent with being abused by Lee or
any other officer.

Guidry
took appellant to an interview room where she told him that everything was
being audio and video recorded.  She then read appellant his statutory
warnings, and appellant indicated that he understood each of the warnings and
was willing to waive his rights and give a statement.  During the interview,
appellant was not handcuffed, and he never told Guidry that he wanted to
terminate the interview or have a lawyer present to advise him.  Guidry said
that she did nothing to intimidate appellant into giving a statement. 
Appellant gave a video recorded statement confessing to the robbery.  On cross-examination,
Guidry stated that she did not have the items recovered at the arrest scene
fingerprinted to determine who had handled them.  She testified that an
employee looked at the recovered bag and told her that it looked like the bag
in the store.  She also said that the manager of the T-Mobile store verified
that the store did not have surveillance equipment.

Appellant
testified at trial, denying that he committed the robbery.  Appellant asserted
that his videotaped statement was neither true nor freely and voluntarily given
because he had requested an attorney and he was afraid and intoxicated.  On
cross-examination, appellant stated that he requested an attorney at the arrest
scene but admitted that when he testified previously in a suppression hearing,
he did not mention requesting a lawyer at the arrest scene.  To account for his
presence in the carport at the apartment complex on the day of the robbery,
appellant explained that he was waiting for a female friend, whose name he
could not recall.  Appellant also claimed that Lee pulled over his patrol car
on the way to the station, got in the backseat, and beat him.








Prior to
trial, appellant filed a Motion to Suppress Statements.  The motion alleged
that appellant had been deprived of numerous constitutional and statutory
rights when Houston Police officers arrested and subjected him to in-custody
interrogation.  At a hearing outside the presence of the jury, Guidry and Lee
gave testimony nearly identical to that which they gave at trial.  Lee also
noted that he had no conversation with appellant about the case during the ride
to the police station, and that appellant did not request a lawyer.

Appellant
also testified at the hearing.  In addition to testimony similar to that which
he gave at trial, he claimed that Guidry threatened to add more charges if he
did not show her and the other officers where the gun was located.  To explain
the fact that the video recording of his statement does not corroborate his
claims, appellant indicated that a period of time elapsed before the video
camera was activated.  On cross-examination, appellant asserted that he was
intoxicated when arrested, having consumed six or seven beers that day. 
Appellant=s trial counsel argued that the trauma appellant suffered from being
bitten by the police dog contributed to the involuntariness of appellant=s statements.  The trial court denied
the motion.

Appellant
also filed a pretrial motion to suppress the identifications by Maldonado and
Cortez.  During a pre-trial hearing on the motion, Maldonado and Banks gave
nearly identical testimony to that which they gave at trial, and the trial
court denied the motion.  During trial, the court held a hearing regarding
Deaver=s in-court identification.  Deaver
was the only witness to testify at this hearing.  She gave basically the same
testimony that she did at trial, except that at the hearing, she described the
robber=s shirt as having some type of design
and writing on it.  The trial court denied appellant=s motion to suppress Deaver=s identification.  The jury
ultimately found appellant guilty of the lesser-included offense of robbery and
assessed punishment at 20 years in prison and a $10,000 fine.

 








LEGAL
& FACTUAL SUFFICIENCY

In his
first two issues, appellant argues that the evidence is legally and factually
insufficient to uphold his conviction for robbery.  Because appellant makes
essentially the same arguments under both issues, we will address the arguments
together while keeping in mind the distinct standards of review.

As
stated, appellant was convicted of robbery.  A person commits robbery if, in
the course of committing theft and with intent to obtain or maintain control of
the property, he or she intentionally or knowingly threatens or places another
in fear of imminent bodily injury or death.  Tex. Pen. Code ' 29.02(a)(2).  AIn the course of committing theft@ includes conduct that occurs in an
attempt to commit, during the commission, or in immediate flight after the
attempt or commission of theft.  Id. ' 29.01(1).  A person commits theft if
he or she unlawfully appropriates property with intent to deprive the owner of the
property.  Id. ' 31.03(a).

In a
legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and determine whether a trier of fact could have found
each element of the offense beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Young v. State, 14 S.W.3d 748, 753 (Tex. Crim.
App. 2000).  The jury is the exclusive judge of the credibility of witnesses
and of the weight to be given to their testimony, and it is within the
exclusive province of the jury to reconcile conflicts in the evidence.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  Thus, when performing
a legal sufficiency review, we may not reevaluate the weight and credibility of
the evidence and substitute our judgment for that of the fact-finder.  Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  We must resolve any
inconsistencies in the testimony in favor of the verdict.  Curry v. State,
30 S.W.3d 394, 406 (Tex. Crim. App. 2000).








In a
factual sufficiency review, we review all of the evidence in a neutral light,
favoring neither party.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App.
2005).  We then ask (1) whether the evidence supporting the conviction,
although legally sufficient, is nevertheless so weak that the jury=s verdict seems clearly wrong and
manifestly unjust, or (2) whether, considering conflicting evidence, the jury=s verdict is against the great weight
and preponderance of the evidence.  Watson, 204 S.W.3d at 414-15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  Additionally, we give
due deference to the jury=s determinations, particularly those concerning the weight of
the evidence and the credibility of witness testimony.  See Johnson, 23
S.W.3d at 8-9.

Under
these issues, appellant makes several highly specific arguments regarding the
evidence.  First, appellant points out that Maldonado=s description of the robber to police
included that he was wearing a t-shirt, a white Ado-rag,@and sunglasses, but when she
identified appellant as the robber, appellant was not wearing any of these
items.  He was, instead, shirtless and without a do-rag or glasses.  Contrary
to appellant=s assertion, however, the fact that at the time of the identification,
appellant was not clothed exactly as the robber had been could actually have
been seen by the jury as strengthening Maldonado=s identification of appellant as the
robber.  Maldonado herself said that she identified him based on facial
characteristics and a bad skin condition.  The jury have reasonably concluded
that these attributes are more specific and reliable than a person=s clothing for identification
purposes.  Furthermore, appellant may easily have discarded his shirt, do-rag,
and sunglasses prior to the identification.  Indeed, Maldonado testified that
she saw a t-shirt near appellant when she identified him.








Appellant
further argues that A[t]here was no direct evidence connecting appellant to the
property recovered by patrol officers in the general vicinity of appellant=s arrest.@  While it is correct that appellant
was not holding the stolen property when arrested, the jury could have viewed
the evidence that stolen property was found in the bushes where appellant was
hiding from police as demonstrative of his prior possession of the property
and, hence, of his guilt.

Next,
appellant emphasizes perceived Aholes@ in the testimony of several police officers.  He points to
Officer Banks= failure to recall specifics of witnesses= descriptions of the robber but does
not explain how this apparent memory lapse diminishes the evidence of guilt. 
Appellant also emphasizes that no surveillance tape or fingerprints were
recovered from the store, no weapon was ever found, and none of the witnesses
gave a written statement.  All of these are matters the jury could have
considered but that do not weigh particularly strongly against the verdict.  See
Wesbrook, 29 S.W.3d at 111 (stating that it is within the exclusive
province of the jury to reconcile conflicts in the evidence).  They are
essentially the absence of additional evidence of guilt, not positive evidence
suggesting the contrary.  See, e.g., Santos v. State, 116 S.W.3d 447,
459 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d) (rejecting argument that lack of
fingerprints connecting appellant to robbery rendered evidence insufficient to
support conviction).








Appellant
further cites to Officer Lee=s testimony that although the description of the robbery he
received indicated that the robber was wearing a black shirt, the person Lee
chased was wearing a white t-shirt.  Lee, however, also testified that he saw
the person he chased carrying something wrapped in a black shirt, and there was
testimony that a black shirt was recovered from the location where appellant
was apprehended.  Thus, the jury could have easily concluded that appellant was
wearing a black shirt at the time of the robbery, which he later removed during
his attempted flight.  Appellant further notes Lee=s claim that he saw a black male=s hand Aflying@ over a fence, Lee=s failure to interview potential
witnesses in the area where appellant was arrested, and Lee=s failure to preserve as evidence the
black shirt appellant had in his possession when arrested.  Each of these is a
matter the jury could have considered in assessing guilt.  See Johnson v.
State, 176 S.W.3d 74, 48 (Tex. App.CHouston [1st Dist.] 2004, pet. ref=d) (stating that alibi testimony,
lack of physical or forensic evidence, and differences in witnesses= testimony were factors for jury to
consider in weighing evidence).  None of these matters weighs particularly
strongly against the verdict.

Appellant
next attacks the identification procedures used by the police when appellant
was identified by Maldonado, Cortez, and Deaver.[1] 
Maldonado and Cortez were permitted to see appellant together, and all three
women identified appellant when appellant was the only handcuffed black male
visible.  While the circumstances of the identifications were not ideal, the
witnesses were confident in their identifications, and the identifications
should be considered in context of the totality of the evidence.  See Petro
v. State, 176 S.W.3d 407, 410-11 (Tex. App.CHouston [1st Dist.] 2004, pet. ref=d) (considering fact that witnesses
were confident in their identifications in assessing sufficiency of the
evidence).  Appellant=s videotaped confession was played for the jury.  Appellant
was apprehended shortly after the robbery, apparently after having run from
police,[2] and while
hiding in bushes near items taken from the store in the robbery.  This
evidence, taken along with the identifications, was legally and factually
sufficient to support the verdict of guilt.

Lastly,
appellant cites to his own testimony denying he committed the robbery, among
other things.  As sole judge of the credibility of the witnesses, the jury was
free to disregard appellant=s testimony in its entirety.  See Wesbrook, 29 S.W.3d
at 111.  Accordingly, we overrule appellant=s first two issues.

 

 








MOTION TO
SUPPRESS STATEMENTS

In
appellant=s third issue, he argues that the trial court erred in denying his motion
to suppress statements he gave to the police because his constitutional and
statutory rights were violated.  Specifically, appellant complains about two
sets of statements admitted at trial.  The first set includes his statement
made shortly after being taken into custody that Athe gun wasn=t real.@  The second set includes those
statements recorded on videotape.

We
review a trial court=s suppression ruling under an abuse of discretion standard.  Villareal
v. State,  935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  At a suppression
hearing, the trial judge is the sole fact finder.  Arnold v. State, 873
S.W.2d 27, 34 (Tex. Crim. App. 1993).  We give almost total deference to the
trial court=s determination of historical facts when supported by the record,
particularly if the findings turn on witness credibility and demeanor.  State
v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Carmouche v. State,
10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).  The same deference is accorded to
determinations of mixed questions of law and fact if their resolution depends
upon witness credibility and demeanor.  Ross, 32 S.W.3d at 856.  When,
as here, the trial court declines to file findings of fact, we view the evidence
in the light most favorable to the trial court=s ruling and assume that the trial
court made implicit findings of fact that support its rulings, as long as those
findings are supported by the record.  Id. at 855; Carmouche, 10
S.W.3d at 327-28.  Issues that present purely legal questions are considered
under a de novo standard.  Ross, 32 S.W.3d at 856.  We will
sustain the trial court=s ruling if it is reasonably supported by the evidence and is
correct on any theory of law applicable to the case.  Villarreal, 935
S.W.2d at 138.








Appellant
initially contends that the trial court should have granted his motion to
suppress because the police lacked probable cause to arrest him.  In Texas, a
warrantless arrest is permitted only when (1) probable cause for the arrest
exists, and (2) at least one of the statutory exceptions specified in Code of
Criminal Procedure articles 14.01 through 14.04 is met.  Tex. Code Crim. Proc.
14.01B.04; McGee v. State, 105
S.W.3d 609, 614 (Tex. Crim. App. 2003).  Probable cause exists when police have
reasonably trustworthy information sufficient to warrant a reasonable person to
believe that a particular person has committed or is committing an offense.  McGee,
105 S.W.3d at 614.  As illustrated by the testimony received at the suppression
hearing, at the time of appellant=s arrest, officers had been informed
by several witnesses that a man fitting appellant=s description had robbed a store. 
Soon thereafter, appellant was seen running and hiding in the vicinity of the
robbery.  He was then located hiding in bushes in close proximity to items
taken in the robbery.[3]  We find that
this evidence supports the trial court=s conclusion that the officers had
probable cause to arrest appellant; accordingly, appellant=s first argument is without merit.[4]








Appellant
additionally asserts that the trial court should have suppressed his statements
because (1) his invocation of the right to counsel was ignored by the police,
(2) he was subjected to police coercion and brutality, and (3) he was
intoxicated when he made the statements.  In support of these contentions,
appellant cites primarily to his own testimony, which the trial court, as the
sole judge of the credibility of witnesses, was free to disregard.  See Ross,
32 S.W.3d at 856.  The videotaped statement does not demonstrate that appellant
requested an attorney or was coerced or brutalized, and none of the police
officers testified that he requested an attorney or was coerced or brutalized. 
Furthermore, several of the officers testified appellant did not appear to be
intoxicated, and Guidry testified that appellant gave his videotaped statement
freely and voluntarily.  Although there was evidence appellant may have
received an injury when discovered by the canine unit, there was no evidence,
other than appellant=s self-serving testimony, that this injury was particularly
traumatic or that it played a role in his subsequent confession.  Appellant=s injuries were treated by EMS at the
scene of his arrest, well before the videotaped statements were made.  Viewing
the evidence in the light most favorable to the court=s ruling, we find the trial court did
not err in admitting appellant=s statements; accordingly, we overrule appellant=s third issue.  Id. at 855.

MOTION TO
SUPPRESS IDENTIFICATIONS

In
appellant=s fourth issue, he argues that the trial court erred in denying his
motions to suppress identifications resulting from improper pretrial
procedures.  A pretrial identification procedure may be so suggestive and
conducive to misidentification that use of the identification at trial would
deprive the defendant of due process.  Simmons v. United States, 390
U.S. 377, 384 (1968); Barley v. State, 906 S.W.2d 27, 32-33 (Tex. Crim.
App. 1995).  In reviewing whether the trial court erred in denying a motion to
suppress a pretrial identification, we ask (1) whether the out-of-court
procedure was impermissibly suggestive; and, if so, (2) whether the suggestive
procedure gave rise to a very substantial likelihood of irreparable
misidentification.  Barley, 906 S.W.2d at 33.  Appellant has the burden to
show by clear and convincing evidence that the in-court identification is
unreliable.  Delk v. State, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993). 
The admissibility of an identification is generally a mixed question of law and
fact that we review de novo.  Loserth v. State, 963 S.W.2d 770,
773 (Tex. Crim. App. 1998); Brown v. State, 29 S.W.3d 251, 254 (Tex.
App.CHouston [14th Dist.] 2000, no pet.).








Here,
Maldonado and Cortez were permitted to identify appellant together, a procedure
which conceivably could have influenced their identifications.  Furthermore,
Maldonado, Cortez, and Deaver all identified appellant as the robber when he
was the only hand-cuffed black male in sight.  This, too, is less than an ideal
procedure.  See Garza v. State, 633 S.W.2d 508, 512 (Tex. Crim. App.
1981) (discussing relative merits and demerits of Aone man showups@).  However, even if these procedures
were impermissibly suggestive, we find that they did not give rise to a very
substantial likelihood of irreparable misidentification.  In determining
whether a very substantial likelihood of irreparable misidentification has
occurred, we consider the following factors:  (1) the witness=s opportunity to view the criminal
act; (2) the witness=s degree of attention; (3) the accuracy of the suspect=s description; (4) the level of
certainty at the time of confrontation; and (5) the time between the crime and
confrontation.  Barley, 906 S.W.2d at 34-35.  In undertaking this
analysis, we view the totality of the circumstances and make a determination as
to the reliability of the identification.  Conner v. State, 67 S.W.3d
192, 200 (Tex. Crim. App. 2001).








Each of
the witnesses was able to view the robber while he was in a retail store before
and during the robbery.  In fact, Maldonado and Deaver viewed him in close
proximity when he grabbed money off the counter between them.  Both testified
at the suppression hearings that they were able to get a good look at him
during the robbery.  This evidence supports the conclusion that the witnesses
(particularly Maldonado and Deaver) had a good opportunity to view the criminal
act and had their full attention on the robber.  While Officer Banks was unable
to recall all the description details given by the witnesses, appellant does
not dispute that the physical description generally matched his own features.[5] 
Furthermore, Maldonado testified that immediately upon seeing appellant, both
she and Cortez recognized him as the robber even though he was no longer
wearing a shirt, sunglasses, or a Ado-rag.@  She said that there was Ano doubt in [her] mind@ that the person she identified as
the robber was the robber.  Lastly, evidence showed that the time between the
robbery and the identifications was approximately twenty minutes for Deaver and
one hour for Maldonado and Cortez, which is a relatively short time frame. 
Thus, all of the relevant factors weigh toward finding that any impermissibly
suggestive identification procedures did not result in a very substantial
likelihood of irreparable misidentification.  Accordingly, the trial court did
not err in denying the motion to suppress the identifications.  We overrule
appellant=s fourth issue.

We
affirm the trial court=s judgment.

 

 

 

 

 

/s/        Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered and Memorandum
Opinion filed July 29, 2008.

Panel consists of Chief Justice
Hedges, Justice Boyce, and Former Justice Price.[6]

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Appellant=s
arguments relating to the admissibility of the identifications are discussed
under issue four below.





[2]  Officer Lee testified that he Abelieved@
appellant was the same individual whom he had pursued.  The jury could have
interpreted this testimony as an identification by Lee.





[3]  As is often the case, it is not clear exactly when
appellant=s initial detention turned into an arrest.  It is
additionally worth mentioning, however, that before appellant made either set
of statements that he now complains about, the eyewitnesses identified him as
the robber.





[4]  Appellant makes no argument regarding the second
requirement for a warrantless arrest, i.e., that at least one of the
relevant statutory exceptions has been met.





[5]  Appellant does point out that there were some
differences between the clothing worn by the robber and the clothing appellant
was wearing when identified.  However, as discussed above in the sufficiency of
the evidence analysis, these differences can be readily explained by appellant=s having discarded certain items during his flight
from the store.  The differences are not apparent contradictions that would
render the initial description suspect.





[6]  Former Justice Frank C. Price sitting by assignment.