**Warren Edward BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–99–00480–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 31, 2000.

Floyd W. Freed, III, Spring, for appellants.

Clavin A. Hartmann, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, ANDERSON and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This is an appeal from a conviction of burglary of a habitation. The sole point of error on appeal is whether the trial court erred by allowing the victim to identify Warren Brown, the appellant, as the assailant in court based on a suggestive pretrial identification procedure.

### FACTUAL AND PROCEDURAL HISTORY

On March 14, 1998, Britt Chelma found an intruder in her house. As she pursued him, he ran up a few steps towards a bathroom. Turning to face Chelma, the intruder then pushed her down one step, causing her to fall backward. Although injured during the fall, Chelma continued to chase the intruder until he left her house. As she waited for the police to arrive, Chelma noticed that a videocassette recorder had been placed on the bathroom floor and her own videocassette recorder and stereo had been placed on her bed, with the cords wrapped around the units as if ready for transport. Also, she noticed that someone had opened and gone through her dresser drawers.

When the police arrived, Chelma stated with certainty that the burglar was a black man with "empty eyes" who was wearing a brown or beige sweater and tan pants. She also gave an approximate age for the intruder, although she was hesitant in doing so. According to the police officer interviewing her at the scene, Chelma was certain that she could identify the burglar if she saw him again. Sometime later, Chelma added that the burglar was about her height, i.e., five feet, five inches. She also described his weight.

Over a month later, Chelma saw a man who fit the description she had given the police. The man was wearing clothes similar to the clothes the intruder had worn and was standing near her house. Chelma immediately drove to a friend's house and called the police because she believed the man she saw outside her house to be the same man who had been inside her home a month earlier. However, Chelma was unable to get a good look at this man's face because he was wearing a baseball cap. By the time the police arrived, the man was gone.

On May 6, 1998, the police showed Chelma a photospread containing six photographs, none of which depicted the appellant. At that time, Chelma did not identify anyone as the burglar. Later that month, the police summoned Chelma to the police station for a video lineup. The video presented five black males of varying heights. According to the testimonies of both Chelma and Officer Laura Whalen, the detective who made the video, the first individual was about six feet; the second was between six feet and six feet, one inch; the third was about five feet, ten inches; and the fourth was between five feet, ten inches and five feet, eleven inches. The height of the fifth man was unclear from the record, varying between five feet, five inches, and five feet, ten inches. Chelma identified the appellant, who was in the fifth position, as the intruder.

The appellant was arrested, tried, and convicted of burglary of a habitation. During the trial, Chelma identified the appellant as the perpetrator over defense objections. The jury found the appellant guilty and sentenced him to fifty years' confinement.

### ADMISSIBILITY OF AN IN-COURT IDENTIFICATION

 An in-court identification is inadmissable if tainted by an unduly suggestive pretrial identification. *See Loserth v. State,* 963 S.W.2d 770, 771 (Tex.Crim.App. 1998). In determining whether the trial court was correct in admitting an in-court identification, the appellate court employs a two-step analysis, inquiring: (1) if the pretrial procedure was impermissibly suggestive; and (2) if so, whether the suggestive pretrial procedure gave rise to a very substantial likelihood of irreparable mis-

identification at trial. *See Ibarra v. State,* 11 S.W.3d 189, 195 (Tex.Crim.App.1999), *cert. filed* March 6, 2000; *Delk v. State,* 855 S.W.2d 700, 706 (Tex.Crim.App.1993). It is the risk of in-court misidentification that taints the identification. *See Webb v. State,* 760 S.W.2d 263, 269 (Tex.Crim.App. 1988). The defendant has the burden to show by clear and convincing evidence that the in-court identification is unreliable. *See Delk,* 855 S.W.2d at 706. The admissibility of an identification is a mixed question of law and fact which the appellate court reviews *de novo. See Loserth,* 963 S.W.2d at 773.

### Suggestiveness of Pre-trial Lineup

 Under the first step of the analysis, we evaluate the pretrial lineup itself to determine whether it was impermissibly or unduly suggestive. "A lineup is considered unduly suggestive if other participants are greatly dissimilar in appearance from the suspect." *Withers v. State,* 902 S.W.2d 122, 125 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd.) (citing *United States v. Wade,* 388 U.S. 218, 232–233, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). A suspect may be greatly dissimilar in appearance from the other participants because of his distinctly different appearance, race, hair color, height or age. *See id.* (citing *Foster v. California,* 394 U.S. 440, 442–43, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969)). However, minor discrepancies between lineup participants will not render a lineup impermissibly suggestive. *See id.* (citing *Partin v. State,* 635 S.W.2d 923, 926 (Tex.App.—Fort Worth 1982, pet. ref'd)). The participants in a lineup do not have to be identical to satisfy the requirements of due process. *See Buxton v. State,* 699 S.W.2d 212, 216 (Tex.Crim.App.1985).

The video lineup did not provide a clear and undisputed record of the height of the appellant, who was the individual in the fifth position, as evidenced by the varying accounts of his height by Chelma and Officer Whalen. Our view of the videotape lineup yielded similar results. It is not possible to determine exact heights from the record; rather, a viewer of the videotape lineup could only estimate that the man in the fifth position was a little under five foot, eight inches. However, one viewing the videotape could easily discern a large differential between the heights of the other four individuals in the lineup and the appellant, a differential which likely rises to the level of "impermissibly suggestive." Assuming the lineup was impermissibly suggestive, we address the second part of the analysis, i.e., whether the pretrial procedure caused a very substantial likelihood of irreparable misidentification.

### Reliability of In–Court Identification

 Under the second phase of the analysis, we assess the reliability of the in-court identification by looking to the factors set forth in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In that case, the United States Supreme Court set forth a list of six, non-exclusive factors to be weighed against "the corrupting effect of suggestive pretrial lineup procedures" in order to assess the reliability of the in-court identification. *See Wade,* 388 U.S. at 241, 87 S.Ct. 1926; *Barley v. State,* 906 S.W.2d 27, 35 n. 8 (1995); *Thompson v. State,* 480 S.W.2d 624, 627 (Tex.Crim.App.1972). These factors include: (1) the prior opportunity to observe the alleged criminal act, (2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description, (3) any identification prior to the lineup of another person, (4) the identification by picture of the defendant prior to the lineup, (5) failure to identify the defendant on a prior occasion, and (6) the lapse of time between the alleged act and the lineup identification. *See Wade,* 388 U.S. at 241, 87 S.Ct. 1926; *Barley,* 906 S.W.2d at 35 n. 8; *Thompson,* 480 S.W.2d at 627. Because the Court of Criminal Appeals does not limit the factors that a reviewing court may consider in evaluating the totality of the circumstances, we also consider the

five factors that are usually applied in evaluating the admissibility of an out-of-court identification as set out in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). *See Barley*, 906 S.W.2d at 35 n. 8.[1] Only two of the *Biggers* factors are not covered by *Wade*; these are the second factor, the witness's degree of attention, and the fourth factor, the level of certainty at the time of confrontation. *See id.* at 34–35. By adding these two to the *Wade* factors, we increase the number of factors we consider to eight, and evaluate all of them in the light most favorable to the trial court's ruling, weighing them and other pertinent factors *de novo* "against the 'corrupting effect' of the suggestive identification itself." *Ibarra*, 11 S.W.3d at 195–96 (citing *Loserth*, 963 S.W.2d at 773–74); *Delk*, 855 S.W.2d at 706. We need not apply the same weight to the factors as the trial court. *See Loserth*, 963 S.W.2d at 774.

We use the first *Wade* factor to determine the historical facts. *See id.* at 773 (citing *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982)). This factor inquires whether the witness had adequate time to view the perpetrator at the time of the crime. Chelma testified that the entire incident took less than sixty seconds. She testified that she viewed the burglar for a moment as she entered her house. As she gave chase, she was again able to view his face for a few seconds from a shorter distance. The intruder turned to face Chelma on the steps and pushed her down, allowing her a close, face-to-face encounter with him. Viewing this factor in the light most favorable to the trial court's ruling, we find Chelma had sufficient opportunity and time to view the perpetrator's face at the time of the crime.

The second *Wade* factor analyzes whether a discrepancy exists between any pre-lineup description and the defendant's actual description. Here, no discrepancy exists. The appellant claims that Chelma gave a vague description. However, aside from the height, weight, race, age and clothing descriptions she provided, it is difficult to discern what further information Chelma could have given the police. There is nothing in the record to suggest the appellant had any unusual features, such as a scar, tattoo or physical deformity.

In a case in which the court found a vague description determinative in holding the in-court identification was not reliable, the key witness described the murderer as "tall and thin" and wearing dark clothes. *See Loserth v. State*, 985 S.W.2d 536, 539 (Tex.App.—San Antonio 1998, pet. ref'd) (hereinafter *"Loserth II"*). Although his descriptions were consistent, the witness was not able to give any more detail to the officers despite several attempts by the police to elicit a better or more meaningful description. *See id.* The witness was finally able to reveal the gender of the murderer after he was hypnotized. *See id.* at 545. Additionally, whether the witness identified the murderer's race was contested, and the witness was over eighty-seven feet away from the murderer when he saw the murderer leave the victim's apartment. *See id.* at 538, 545. The *Loserth II* court found that such a description deserved little or no weight. *See id.* at 548. In contrast, Chelma provided a race and gender description immediately and expressed

---

**1.** Those factors are: 1) the witness's opportunity to view the criminal act, 2) the witness's degree of attention, 3) the accuracy of the suspect's description, 4) the level of certainty at the time of confrontation, and 5) the time between the crime and confrontation. *See Barley*, 906 S.W.2d at 34–35 (citing *Biggers*, 409 U.S. at 199–200, 93 S.Ct. 375). *Barley* states that the difference between *Wade* and *Biggers* is that the *Wade* factors are "applied in reference to lineups" whereas the *Biggers* factors are applied in reference to "photographic arrays". *Id.* at 35 n. 8. However, *Biggers* involved a "show-up" identification, not a photographic array. 409 U.S. at 195, 93 S.Ct. 375. Actually, the difference between *Biggers* and *Wade* is that *Biggers* addresses the admissibility of out-of-court identifications while *Wade* addresses the admissibility of in-court identifications. *See id.* at 198, 93 S.Ct. 375; *Wade* 388 U.S. at 219, 87 S.Ct. 1926.

her certainty that she would be able to identify the perpetrator if she saw him in the future. Chelma also provided a subsequent description of the perpetrator's estimated height and weight. Perhaps most importantly, Chelma was face to face or within inches of him on the day of the burglary. We do not find that Chelma's description was vague or that this case is similar to *Loserth II*.

The third, fourth, and fifth *Wade* factors inquire whether there was an identification of another person prior to the lineup, whether the witness was able to identify the defendant by picture prior to the lineup, and whether the witness failed to identify the defendant on a prior occasion. Before the lineup, Officer Whalen showed Chelma a photo spread that did not include the appellant. Chelma was very certain that the burglar was not in the photo spread. The police did not provide Chelma any other opportunities to view photographic lineups before the video lineup in question, and Chelma did not fail to identify the appellant on any occasion.

The sixth *Wade* factor inquires into the length of time between the alleged act and the lineup identification. At least one of our sister courts of appeals has concluded that two and a half months is not long enough to automatically assume the witness's memory has faded. *See Woodson v. State*, 777 S.W.2d 525, 531 (Tex.App.—Corpus Christi 1989, pet. ref'd.) (citing *Durrough v. State*, 672 S.W.2d 860, 868 (Tex.App.—Corpus Christi 1984), *reversed on other grounds, Durrough v. State*, 693 S.W.2d 404 (Tex.Crim.App.1985) (holding that four months did not create a substantial likelihood of misidentification)). The burglary occurred on March 14, 1998; the lineup identification occurred on May 21 of that same year. Therefore, sixty-seven days, or a little over two months passed between the criminal act and the lineup identification. We do not find this interval of sufficient duration to automatically assume Chelma's memory had faded.

We also consider the degree of attention the witness focused on the criminal act taking place. Witnesses who are more than just casual observers have more reason to be attentive. *See Barley*, 906 S.W.2d at 35. There is no question that Chelma was more than a casual observer. She spotted an intruder in her own home and followed him up the stairs, clearly maintaining her focus on him. By its very nature, this personal intrusion commanded her full attention. The appellant asserts that Chelma's degree of attention was compromised because she suffered a head injury during the incident. Although the record reflects that Chelma's injury required six staples to her scalp, she testified that she barely felt the head injury. Although this response could indicate a degree of shock, it could also indicate a degree of preoccupation with the intruder, as evidenced by her chasing him before and after the injury. Viewing the evidence in the light most favorable to the trial court's ruling, we find Chelma maintained a high degree of attention towards the intruder.

Finally, we consider the level of certainty the witness demonstrated at the confrontation. According to Chelma and Officer Whalen, Chelma was unshakable in her conviction that the appellant was the intruder in her home. Chelma stated that she identified the appellant as he first entered the lineup but waited to verbally identify him until the end of the lineup according to the detective's directions. Also, Chelma testified that she identified the appellant by recognizing his *face;* his height was not a critical factor in her identification. Chelma's high degree of certainty as to her identification of appellant carried through to the trial where she remained convinced the appellant was the burglar. She testified that her identification of him was based upon her observations on the day of the burglary, particularly during her close encounter with him as he faced her on the steps, and that she would have recognized him in court without having seen him in the video lineup.

Having reviewed the historical facts, we now weigh them against the effect of the pretrial lineup. The only factor that reasonably could be construed against the reliability of the in-court identification is the very short period of time Chelma had to view the intruder; however, the Court of Criminal Appeals has made it clear that the length of the encounter is not necessarily determinative. *See Delk*, 855 S.W.2d at 706. Another court has likewise noted that viewing the perpetrator for several seconds is enough to support the trial court's ruling. *See Williams v. State*, 985 S.W.2d 240, 243 (Tex.App.—Beaumont 1999, no pet.). We cannot discount Chelma's testimony that her in-court identification was based solely on what she saw the day of the burglary, nor can we minimize her fairly detailed description prior to the pretrial lineup. Considering the weight of all the other factors, it is reasonable to conclude that Chelma remembered the burglar's face and recognized him based on her memory of the incident. We find that even if the pretrial lineup was impermissibly suggestive, the appellant did not meet his burden of showing, by clear and convincing evidence, that the in-court identification gave rise to a very substantial likelihood of irreparable misidentification at trial. Accordingly, we affirm the trial court's ruling.