Affirmed and Memorandum Opinion filed April 1, 2008








Affirmed and Memorandum Opinion filed April 1, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00228-CR

____________

 

GARI MANFREDO CHACON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 184th
District Court

Harris County, Texas

Trial Court Cause No. 1102782

 



 

M E M O R A N D U M   O P I N I O N

A jury
found appellant, Gari Manfredo Chacon, guilty of aggravated robbery and
assessed punishment at 60 years= imprisonment and a $10,000.00 fine.  On appeal, appellant
raises the following three issues: (1) the trial court erred in denying his
motion to suppress a pretrial line-up identification because it was
impermissibly suggestive; (2) the evidence is legally and factually
insufficient to uphold his conviction; and (3) appellant received ineffective
assistance of counsel because his trial attorney failed to object to evidence
that a third person viewed the pretrial line-up.  We affirm.








BACKGROUND

On
November 15, 2004, two men robbed Karen Carnes and her fiancé, Christopher
Martin, in their apartment.  Carnes discovered the first intruder in her
hallway.  Wearing a bandana across his face, the intruder pointed a gun at
Carnes, told her he was robbing her, and pulled her into the back bedroom. The
second intruder, wearing a hooded shirt and baseball cap, tied Carnes= wrists together behind her back and
bound her ankles.  She was gagged, and her head was covered with a towel. 

Martin
was forced into the back bedroom as well at gunpoint by the first intruder and
at knife point by the second intruder; he was pushed to the floor and bound at
his wrists and ankles with electrical cords.  The intruders then left the
couple in the back bedroom and ransacked the apartment in search of valuables. 
Over the next twenty minutes, Martin began to untie himself.  He was caught by
one of the intruders, who then Ahogtied@ Martin by tying his wrists to his ankles and ankles to the
door.  While retying him, the intruder said AOh, you=re good. You almost got free.@  

Carnes
later removed the towel from her head and observed the first intruder, whom she
identified as appellant.  He had removed the bandana from his face.  Carnes was
startled by his appearance because he had a striking resemblance to her
brother.  Carnes observed appellant for one to two minutes while he was
standing in the hallway eating.  During the course of the robbery, the
intruders repeatedly asked the couple for money.  While the assailants spoke to
Carnes and Martin in English, they spoke to one another in Spanish.  When the
intruders left after two hours, they took valuables belonging to Carnes and
Martin, including various electronics and jewelry.  The couple then managed to
untie their restraints and called the police.








Ten days
later, appellant and the second intruder were arrested for an unrelated
burglary at a nearby habitation.  In February 2005, Carnes, Martin and Wesley
Hocutt were asked to view a line-up.[1]  Detective
James Taylor of the Houston Police Department testified that the three
witnesses jointly viewed the line-up in one room with him.  After the viewing,
Detective Taylor interviewed each witness separately.[2] 
Carnes immediately identified appellant, who strongly resembled her brother. 
Martin identified appellant by his voice based on a series of verbal responses
made by the suspects during the line-up; he remembered appellant=s voice as the voice demanding money
during the robbery.  Appellant was arrested and charged by indictment with
aggravated robbery for the November 15, 2004 incident.  A jury found appellant
guilty and assessed punishment at 60 years= imprisonment and a $10,000.00 fine.[3] 


PRETRIAL
LINE-UP IDENTIFICATION

In
appellant=s first issue, he alleges that the trial court erred in denying his
motion to suppress evidence because the pretrial line-up identification
procedure was impermissibly suggestive.  In this two-fold argument, appellant
complains that the pretrial line-up procedure was unduly suggestive because:
(1) appellant, unlike three other participants, required a translation and (2)
three witnesses viewed the line-up together in one room.








A
pretrial identification procedure may be so suggestive and conducive to
misidentification that use of the identification at trial would deprive the
defendant of due process.  Simmons v. U. S., 390 U.S. 377, 384 (1968); Barley
v. State, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995).  In reviewing
whether the trial court erred in denying a motion to suppress a pretrial
identification, we ask (1) whether the out-of-court procedure was impermissibly
suggestive; and, if so, (2) whether the suggestive procedure gave rise to a
very substantial likelihood of irreparable misidentification.  Barley,
906 S.W.2d at 33.  We consider the following factors in determining whether a
very substantial likelihood of irreparable identification has occurred: (1) the
witness= opportunity to view the criminal
act; (2) the witness= degree of attention; (3) the accuracy of the suspect=s description; (4) the level of
certainty at the time of confrontation; and (5) the time between the crime and
confrontation.  Id. at 34-35.  In applying this analysis, we view the
totality of the circumstances and make a determination as to the reliability of
the identification.  Conner v. State, 67 S.W.3d 192, 200 (Tex. Crim.
App. 2001).  Appellant has the burden to show by clear and convincing evidence
that the in-court identification is unreliable.  Delk v. State, 855
S.W.2d 700, 706 (Tex. Crim. App. 1993).  The admissibility of an identification
is a mixed question of law and fact which we review de novo.  Loserth
v. State, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998); Brown v. State,
29 S.W.3d 251, 254 (Tex. App.CHouston [14th Dist.] 2000, no pet.).    








Appellant
complains of a line-up conducted at the Harris County Jail in which he and four
other Hispanic males participated.  Prior to conducting the line-up, Detective
Taylor spoke with the five participants outside the line-up room and told them
he would be giving two sets of instructions during the line-up:  they would be
asked to state their individual ages, weights, and heights and to repeat three
specific phrasesB AGive me the money,@ AOh, you=re good,@ and AI=m sorry, I=m sorry.@  After this discussion, Detective
Taylor walked the participants into the room and began the line-up with his
instructions.  The participants were first instructed to state their individual
ages, weights, and heights, turn around, and move their heads up and down and
side to side.  Participant one had apparent difficulty understanding the
instructions in English.  To assist, one of the other participants translated
the instructions from English to Spanish.  Participant one then responded in
English.  Participants two through four responded in English.  Participant
five, identified as appellant, also had apparent difficulty understanding the
instructions given by Detective Taylor in English.  One of the other
participants translated the instructions from English to Spanish.  Appellant
then responded in Spanish.[4]  The
participants were then asked to repeat the phrases, AGive me the money! Oh, you=re good! I=m sorry, I=m sorry!@  All participants, including
appellant, immediately responded in English. 

Like
appellant=s weight, height, and age, his voice is an identifying physical
characteristic.  See U.S. v. Wade, 388 U.S. 218, 222-23 (1967). 
Physical characteristics, such as one=s voice, need not be identical in a
line-up.  See Buxton v. State, 699 S.W.2d 212, 216 (Tex. Crim.
App. 1985).  The fact that appellant responded partially in Spanish does not
single him out and does not impermissibly suggest identification.  All participants
were required to repeat the same phrases, and appellant was not the only
individual assisted with a translation.  Moreover, both witnesses identified
appellant without any prompting or reinforcement.  Carnes testified that she
immediately identified appellant because he strongly resembled her brother. 
Martin testified that he identified appellant by his voice.  Martin remembered
appellant=s voice as the voice demanding money the night of the robbery. 
Additionally, all participants were Hispanic, of the same weight, height, and
age, and in the same clothing.[5] 








Appellant
also argues that the witnesses possibly spoke with one another during the
viewing because they were in a small room.  However, the record does not
affirmatively show any verbal or nonverbal communication between the witnesses
during the viewing.  Moreover, the fact that witnesses jointly viewed a
line-up, in and of itself, is not impermissibly suggestive.  See Hughes v.
State, 962 S.W.2d 689, 696 (Tex. App.CHouston [1st Dist.] 1998, pet. ref=d).  Here, Detective Taylor, who was
in the room with the witnesses during the viewing, testified that the witnesses
did not speak with each other about possible suspects.  Detective Taylor also
testified that he interviewed each witness separately.  Carnes and Martin
testified that they did not speak to anyone regarding the identification during
the viewing and were interviewed separately.  Accordingly, the trial court did
not abuse its discretion in holding that the out-of-court identification
procedures were not impermissibly suggestive and did not cause the witnesses to
misidentify appellant.  Because the identification procedure is not
impermissibly suggestive, we need not determine whether it created a
substantial likelihood of misidentification.  See Webb v. State,
760 S.W.2d 263, 269 (Tex. Crim. App. 1988).  We overrule appellant=s first issue.

LEGAL AND
FACTUAL INSUFFICIENCY

In
appellant=s second issue, he argues that the identity evidence is legally and
factually insufficient to uphold his conviction.  In a legal
sufficiency review, we view all of the evidence in the light most favorable to
the verdict and determine whether a trier of fact could not have found each
element of the offense beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Young v. State, 14 S.W.3d 748, 753 (Tex. Crim.
App. 2000).  The jury is the exclusive judge of the credibility of witnesses
and of the weight to be given to their testimony.  Jones v. State, 944
S.W.2d 642, 647 (Tex. Crim. App. 1996).  Reconciliation of conflicts in the
evidence is within the exclusive province of the jury.  Id.  Thus, when
performing a legal sufficiency review, we may not reevaluate the weight and
credibility of the evidence and substitute our judgment for that of the
fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999).  We must resolve any inconsistencies in the testimony in favor of the
verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).








When reviewing the factual sufficiency of the evidence to
support a conviction, we review all the evidence in a neutral light, favoring
neither party.  Watson v. State, 204 S.W.3d 404, 414‑15 (Tex.
Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App.
2005).  We then ask (1) whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the jury=s verdict seems
clearly wrong and manifestly unjust, or (2) whether, considering conflicting
evidence, the jury=s verdict is against the great weight and
preponderance of the evidence.  Watson, 204 S.W.3d at 414‑15, 417;
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  
Additionally, we give due deference to the jury=s determinations,
particularly those concerning the weight of the evidence and the credibility of
witness testimony.  See Johnson, 23 S.W.3d at 8-9.

Two
eyewitnesses, Carnes and Martin, positively identified appellant as one of the
intruders in the November 15, 2004 robbery.  They made these identifications by
recognizing appellant=s face and voice.  Because the intruders covered their faces,
appellant challenges the witnesses= ability to make an identification. 
Specifically, appellant argues that Carnes= and Martin=s identifications are unreliable
because: (1) Carnes was face down when the intruders committed the crime and
(2) the faces of the intruders were covered during the course of the robbery.[6] 
After reviewing the evidence under the applicable standards of review, we hold
that a rational trier of fact could have concluded beyond a reasonable doubt
that appellant was one of the intruders.  Additionally, we hold that the evidence
is not so weak as to be against the great weight and preponderance of the
evidence.  








Carnes
testified that she was able to immediately identify appellant in the line-up
and subsequently in court because he strongly resembled her brother.  Although
the first intruder initially covered a portion of his face with an bandana,
Carnes testified that he later removed the bandana, exposing his entire face. 
Carnes testified that she then turned her head and had an opportunity to
observe the first intruder for one to two minutes.  Furthermore, Martin
testified that he recognized appellant=s voice during the line-up as the
same voice demanding money during the robbery.  Carnes and Martin testified
that the intruders asked for money throughout the robbery, giving Martin ample
opportunity to hear and remember the voice.  Martin testified that he
specifically remembered the way appellant said money because of his Spanish
accent and emphasis on the letter Ao.@  See McInturf v. State, 544
S.W.2d 417, 419 (Tex. Crim. App. 1976) (holding that voice identification
constitutes direct evidence); Terrell v. State, 766 S.W.2d 561, 564
(Tex. App.CBeaumont 1989, no pet.) (stating that voice identification is sufficient,
in and of itself, to prove identity); Williams v. State, 747 S.W.2d 812,
813 (Tex. App.CDallas 1986, no pet.) (recognizing that voice identification, based on
statements made during the crime, is sufficient to identify defendant as
assailant).  Appellant also assumes that he was the only line-up participant
with a Spanish accent.  However, appellant cites to no evidence in the record
supporting this assumption.  But see Davis v. State, 180 S.W.3d 277,
284-85 (Tex. App.CTexarkana 2005, no pet.) (holding that the line-up procedure
was not impermissibly suggestive where only two voices were presented for
witness identification). We also note that participant one received the same
translation as appellant.  Having found both identifications proper and
reliable, we hold that the identity evidence is legally and factually sufficient
to support appellant=s conviction.  We overrule appellant=s second issue.

INEFFECTIVE
ASSISTANCE OF COUNSEL








In
appellant=s third issue, he alleges that he received ineffective assistance of
counsel because his trial attorney failed to object to evidence of a third
person who viewed the pretrial line-up.  To prove ineffective assistance of
counsel, appellant must demonstrate that his counsel=s performance was deficient because
it fell below an objective standard of reasonableness, and there was a
reasonable probability that, but for counsel=s errors, the result of the
proceeding would have been different.  Strickland v. Washington, 466
U.S. 668, 687 (1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim.
App. 2005).  There is a strong presumption that counsel=s conduct fell within the wide range
of reasonable professional assistance, and we will sustain allegations of
ineffectiveness only if they are firmly founded in the record.  Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  In the absence of evidence
regarding counsel=s reasons for the challenged conduct, the record on direct
appeal is simply undeveloped and cannot adequately reflect the alleged failings
of trial counsel.  Freeman v. State, 125 S.W.3d 505, 506-507 (Tex. Crim.
App. 2003).

Here,
appellant did not allege ineffective assistance in a motion for new trial, and
the record contains no explanation for counsel=s conduct.  We may therefore reverse
only Aif the conduct was so outrageous that
no competent attorney would have engaged in it.@  Garcia v. State, 57 S.W.3d
436, 440 (Tex. Crim. App. 2001).  Appellant alleges that his trial counsel rendered
ineffective assistance because he failed to object to Detective Taylor=s testimony that he contacted Hocutt
to view the line-up.  The complained-of testimony is as follows:

The State:                   Who did you contact to show
this lineup to?

Officer Taylor:          I contacted Karen Carnes,
Thomas Martin, and Wesley Hocutt.

The State:                   Okay.  Let=s talk about Karen Carnes and Chris Martin.  Those
were the complainants B listed complainants in the aggravated robbery that
took place on November 15, 2004, correct?

Officer Taylor:          Yes, sir.

 








Hocutt=s name was not mentioned thereafter. 
According to appellant, the isolated mention of Hocutt=s name was evidence of an extraneous
offense because a reasonable juror could surmise that Hocutt was there to view
the line-up as a victim of another offense in which appellant was involved.  
We disagree.  Officer Taylor=s statement that he contacted Hocutt to view the line-up is
not evidence that appellant had committed an extraneous offense.  In fact, the
trial court explicitly suppressed all evidence of other burglaries, and there
is no evidence in the record that either party violated this evidentiary
ruling.   Furthermore, there may have been strategic reasons for not objecting
to Officer Taylor=s response; however, we may not speculate on counsel=s motives in the face of a silent
record.  See Thompson, 9 S.W.3d at 814.  We cannot say that defense
counsel=s conduct was Aso outrageous that no competent
attorney would have engaged in it.@  See Garcia, 57 S.W.3d at
440.  We overrule appellant=s third issue.

We affirm the trial court=s judgment.                      

 

 

/s/        Adele Hedges

Chief Justice

 

 

 

Judgment rendered and Memorandum
Opinion filed April 1, 2008.

Panel consists of Chief Justice
Hedges and Justices Anderson and Brown.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1] Hocutt was a witness in an unrelated burglary in which appellant was a
suspect. 





[2] Although Detective Taylor testified that the three witnesses jointly
viewed the line-up and were interviewed separately, Carnes and Martin testified
that they viewed the line-up separately and were interviewed separately.  





[3] A person commits aggravated robbery when he exhibits a deadly weapon in
the course of committing theft of property and has the intent to obtain and
maintain control of the property.  Tex. Penal Code Ann. '' 29.02, 29.03, 31.03 (Vernon 2003).





[4] Although appellant had difficulty initially understanding the
instructions in English, he appeared to have no difficulty understanding and
responding to the instructions to move his head up and down and side to side.





[5] We also note that Carnes testified that the intruders were bilingual,
speaking to her and to Martin in English and to one another in Spanish. The
argument that appellant spoke no English would tend to rule out his role as the
intruder. 





[6] Appellant also argues that Martin=s
identification is unreliable because he incorrectly testified that appellant
had gray and black hair at the time of the robbery.  However, this argument is
irrelevant for purposes of identification because Martin identified appellant
by his voice, not his physical appearance.