Affirmed and Memorandum Opinion filed November 18, 2008








Affirmed and Memorandum Opinion filed November 18,
2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00140-CR

_______________

 

MAJOR KEITH TOLBERT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                                

On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 1113398

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N

A jury
found appellant, Major Keith Tolbert, guilty of robbery.  The court assessed
punishment at thirty-five years= confinement.  In two issues, appellant argues the trial
court erred in (1) not suppressing identification evidence and (2) admitting
evidence of his prior convictions.  Because our disposition is based on clearly
settled law, we issue this memorandum opinion and affirm.  See Tex. R.
App. P. 47.4.








I.  Factual and Procedural Background

Around
8:30 p.m. on April 19, 2007, Angela Feit, the complainant, was at a gas station
putting air in her tires.  She chose this gas station because it was well
lighted and seemed safe.  As she filled her tires, she noticed a man looking at
her car.  The man walked around to the passenger side of Feit=s car, seemed to look in, and walked
to the rear of her car.  The man then walked toward a red Cadillac, spoke to
the driver, and returned to Feit.  He demanded Feit open her car door and give
him her purse.  When Feit hesitated, the man repeated his demand and, with his
hand in his waist band, told Feit he had a gun and would shoot her.  Feit
fumbled for her keys, opened her car door, and handed the man her purse.  The
man walked away and got into the passenger seat of the Cadillac.

During
the encounter, Feit was about two to three feet from the man.  She initially
could not see his face clearly because she was crouched down filling her
tires.  When she handed him her purse, however, she tried to get as good a look
at his face as possible.  The area was illuminated by a street light, and there
was also good light from the gas station.

As she
watched the Cadillac drive away, Feit repeated the license plate numbers and
letters over and over in her head.  She immediately called 911 and related the
incident and the license plate number.  When the officers arrived a few minutes
later, she gave them a brief statement and a description of the man.  She
described the getaway car as a red four-door Cadillac with a white top and
described her attacker as wearing jeans and a light-colored tee-shirt.

Feit
went home, and almost immediately a police officer arrived.  He told her they 
found the car matching her earlier description and apprehended two men.  The
officer asked Feit to go with him to see whether she could identify them.  Feit
agreed, and the officer took her to the parking lot where the officers had
detained the men.  Feit identified appellant as the person who took her purse. 
Appellant was arrested and charged with robbery.








Appellant
filed a pre-trial motion to suppress identification evidence.  At the
suppression hearing, Feit testified the lighting in the parking lot enabled her
to get a Agood look@ at appellant.  Feit had noticed appellant before the robbery
because he walked around her car.  Appellant was only two to three feet away
from Feit when he demanded her purse.

Feit
also testified she was told that the two persons at the show-up were the men in
the Cadillac she had identified.  The officers, however, did not tell Feit the
men were involved in the robbery; they simply asked her whether she recognized
them.  Feit was Aa few yards@ away when she saw each man, and the officers pointed a
spotlight on them.  The officers took one man out of the police car for Feit to
identify, and Feit Aknew right away@ this man was not her attacker.

When
they showed Feit the second man, she believed this was the person who had held
her up.  She recognized him from his build, facial characteristics, and Afrom just looking at his face.@  She was seventy-five to eighty
percent sure, but was not completely confident.  Feit told the officers she
knew she would definitely recognize the man=s voice.

The
officers situated Feit so she could clearly hear the man=s voice and told him to say Apurse,@ Agun,@ and Ashoot.@  When he spoke, Feit was sure this
was the man who had robbed her.  She testified that appellant had Aa very distinctive voice.  Some
voices stay with you, and that night that voice stayed in my head.@

Appellant
called Officer William Davis, who was the primary officer in the case and
testified Feit described Athe information she got from her attacker,@ as well as the car and license
number.  Within twenty to twenty-five minutes after Davis received the call
about the robbery, another officer stopped the Cadillac Feit had described. 
Davis confirmed that no one told Feit she had to identify appellant or
suggested that he was the one who robbed her.








The
trial court denied appellant=s motion to suppress, and the case proceeded to trial.  At
trial,  Feit reiterated substantially the same testimony she gave at the
suppression hearing.  She also identified appellant as the person who robbed
her.  In addition to Feit and Davis, three other persons involved in the
investigation testifed.

Officer
Nathan Wackman testified he responded to Feit=s robbery call and was present when
she identified appellant as her attacker.  No one suggested Feit Aneeded to identify those two
suspects.@

Harris
County Deputy Constable Gerald Hall testified he stopped the red Cadillac that
night and appellant was in the passenger seat.  Appellant fled on foot, but
Hall located him a few blocks away, hiding in a shed.

Police
Sergeant Kenneth Campbell testified he spoke to appellant at the scene and
noticed he had Aa very distinctive voice.@  He described procedures the police
used for the identification.  Campbell explained that he tries to be impartial
and does not ask leading questions.  He testified Feit did not seem hesitant in
her identification of appellantCAshe seemed pretty sure.@  He explained he watched Feit=s face during the voice
identification, and, when appellant spoke, Abasically that hit on something.@  Campbell testified Feit said, Athat=s him, that=s him, that=s him.@  Campbell also testified he
discovered that, on the night of the robbery, Feit=s credit card was used at a store
located between the robbery and arrest sites.

After
the State rested, the court heard appellant=s motion to exclude several prior
convictions the State intended to use for impeachment or punishment.  Appellant
argued these convictions were too similar to the charged offense, were remote,
and the prejudicial effect outweighed the probative value.  The trial court
indicated it would allow evidence of three of the offensesCa 1992 conviction for unauthorized
use of a motor vehicle, a 1989 conviction for possession of a prohibited
weapon, and a 1987 conviction for auto theft.  








Appellant
testified at trial.  On direct examination, he admitted that he had previously
been convicted of the three offenses.[1]  He denied
robbing Feit.

The jury
found appellant guilty.

II.  Discussion

A.        Identification

In his
first issue, appellant argues the trial court erred in not suppressing Athe overly suggestive identification.@  He contends the show-up was
impermissibly suggestive and tainted Feit=s in‑court identification of
him.  In part, he complains the show-up procedure was unduly suggestive because
Feit knew the two men she was shown were from the car she had identified.








The
admissibility of an identification is generally a mixed question of law and
fact, which we review de novo.  Loserth v. State, 963 S.W.2d 770, 773
(Tex. Crim. App. 1998); Brown v. State, 29 S.W.3d 251, 254 (Tex. App.CHouston [14th Dist.] 2000, no pet.). 
We follow two steps to determine whether a trial court erred in admitting an in‑court
identification. First, we consider whether the pretrial identification
procedure was impermissibly suggestive.  Barley v. State, 906 S.W.2d 27,
33 (Tex. Crim. App. 1995). Second, if we conclude the procedure was
impermissibly suggestive, we determine whether the procedure gave rise to a
very substantial likelihood of irreparable misidentification.  Id. 
Analysis under these steps requires an examination of the totality of the
circumstances of the case and a determination of the reliability of the
identification.  Id.

Reliability
is the lynchpin in determining the admissibility of identification testimony.  Webb
v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).  It is appellant=s burden to show by clear and
convincing evidence that the in‑court identification is unreliable.  Delk
v. State, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993).

Turning
to the first step of the analysis, we observe that, although a show-up has some
degree of suggestiveness, its use is necessary in many situations.  Garza v.
State, 633 S.W.2d 508, 512 (Tex. Crim. App. 1982).  By viewing the alleged
perpetrator of the offense immediately after its commission, the witness is
allowed to test her recollection while her memory is still fresh and accurate. 
Id.  Quick confirmation or denial of identification also enables the
police to release innocent suspects and continue their search for the
perpetrator while he is still within the area and before he can substantially
alter his looks or dispose of evidence of the crime.  Id.  Finally,
rigorous cross‑examination of the witness can expose any possible
prejudice resulting from such a confrontation.  Id.








The
show-up used in the present case could be considered necessary.  First, Feit
had given the police a description of appellant=s appearance and the Cadillac in
which he left, as well as the license number on the Cadillac.  The show-up,
which took place less than an hour after the crime, enabled the officers to
test Feit=s identification while the events were fresh in her mind.  Second,
although the police detained two possible suspects, Feit identified only one
and Aknew right away@ the other man was not her attacker. 
Finally, appellant=s counsel cross-examined Feit and the officers conducting the
identification, thus allowing appellant to expose any possible prejudice
resulting from the procedure.  See  Louis v. State, 825 S.W.2d 752, 754,
756 (Tex. App.CHouston [14th Dist.] 1992, pet. ref=d) (concluding on‑scene
identification not impermissibly suggestive when confrontation occurred an hour
after offense, witness immediately identified defendant, and cross‑examination
could have exposed any possible prejudice resulting from confrontation).

In
addition to arguing use of a show-up itself results in a degree of
suggestiveness, appellant further contends the procedure was unduly suggestive
because Feit knew the two men she viewed were occupants of the car she had
identified.  Although this aspect of the procedure may have been suggestive, we
cannot conclude it was impermissibly so.  See Barley, 906 S.W.2d at 33B34.  The officers did not tell Feit
she had to identify either one of the persons she was being shown.  She knew
definitely the first man the officers showed her was not the man who robbed
her.  She apparently was comfortable expressing a less than one-hundred percent
certainty after viewing the second man.  Having said she would definitely
recognize his voice, she did so.  Appellant has not shown by clear and
convincing evidence the show-up, if suggestive, was impermissibly so.  See
id.

Nevertheless,
assuming arguendo, the procedure was impermissibly suggestive, we cannot
conclude it gave rise to a substantial likelihood of irreparable
misidentification.  We turn now to the second step of the analysis.








To
determine whether a suggestive procedure gave rise to a  substantial likelihood
of irreparable misidentification at trial, we ask whether the subsequent
in-court identification testimony is reliable under the totality of the
circumstances. See Webb, 760 S.W.2d at 269.  In assessing reliability
under the totality of the circumstances, we weigh the following five non‑exclusive
factors against the corrupting effect of any suggestive identification
procedure:  (1) the opportunity of the witness to view the perpetrator at the
time of the crime; (2) the witness=s degree of attention; (3) the
accuracy of the witness=s prior description of the perpetrator; (4) the level of
certainty demonstrated by the witness at the confrontation; and (5) the length
of time between the crime and the confrontation.  Ibarra v. State, 11
S.W.3d 189, 195 (Tex. Crim. App. 1999) (citing Neil v. Biggers, 409 U.S.
188, 199, 93 S. Ct. 375 (1972)).  We consider these and other relevant factors
deferentially in the light most favorable to the trial court=s ruling.  See id.  Viewing
the factors in this light, we then weigh them de novo against the corrupting
effect of the suggestive pretrial identification procedure.  See id. at
195B96.

During
the robbery, Feit was able to view appellant from two to three feet away in an
area sufficiently lighted for her to get a clear look at him.  Appellant caught
Feit=s attention even before the robbery
as he walked around her car.  When she saw appellant at the show-up, Feit was
seventy-five to eighty percent sure appellant was the person who robbed her. 
When she heard his voice, however, she was sure he was the person.  Less than
an hour passed between the robbery and the identification confrontation.[2]

After
reviewing the totality of the circumstances, we conclude appellant has not
shown by clear and convincing evidence that the show-up identification was
impermissibly suggestive and that it resulted in a very substantial likelihood
of irreparable misidentification at trial.  See Barley, 906 S.W.2d at
34; Delk, 855 S.W.2d at 706.  Accordingly, we overrule appellant=s first issue.

B.        Prior Convictions

In his
second issue, appellant contends the trial court erred Ain admitting convictions too remote
and prejudicial to be admissible.@  Appellant, however, testified about
these convictions on direct examination in an attempt to preempt questions he
anticipated from the State on cross-examination.  Therefore, appellant has
waived appellate review of this issue.  See Wootton v. State, 132 S.W.3d
80, 84 & n.8 (Tex. App.CHouston [14th Dist.] 2004, pet. ref.d).  We therefore
overrule appellant=s second issue.








Having
overruled appellant=s two issues, we affirm the judgment.

 

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed November 18, 2008.

Panel consists of Justices Yates,
Seymore, and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 

 









[1]  Before appellant testified, his counsel informed the
court:

 

In regard to the theus [sic] hearing that we had
yesterday, in view of the Court=s ruling as a
matter of trial tactics I intend to bring out the prior convictions on direct
rather than waiting for the State to use them on cross-examination, and I want
the record to reflect that by doing so I=m
not waiving my objections to the admissibility of these prior convictions, and
I am admitting them on direct because of the Court=s ruling and as a matter of trial tactics.

 

The trial court responded, AThat=s great.@





[2]  There was no testimony at the suppression hearing
regarding whether Feit provided Davis with a physical description of the person
who robbed her.  On cross-examination at the suppression hearing, Feit
testified she had not noticed anything distinctive about appellant=s appearance the night of the robbery, but admitted Ahis ears do stick out.@