Opinion issued April 14, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00505-CR

———————————

Troy Jerrington Mallet, Appellant

V.

State of
Texas, Appellee



 



 

On Appeal from the 180th District Court

Harris County, Texas



Trial Court Case No. 1221557

 



 

MEMORANDUM OPINION

          A
jury found Troy Jerrington Mallet guilty of aggravated robbery, and the trial
court assessed a sentence of ten years’ confinement.  In his single issue on appeal, Mallet contends
that the trial court erred in admitting the complainant’s in-court
identification of Mallet as the perpetrator because it was the result of an
impermissibly suggestive pretrial identification procedure.  We find no error and affirm.

Background

Quintra Stepney worked as assistant
manager of a Family Dollar Store in Houston. 
One evening in May 2009, she and her co-worker, LaPorsha Butler, were
preparing to close the store.  Butler was
chatting with her boyfriend, E.J. Simon. 
She escorted him to the door and appeared to be preparing to lock it when
two men entered.  One of the men, who
appeared to be in his mid-twenties, wore dark clothing.  He was close to six feet, four inches tall,
and heavy-set, about 400 pounds.  The
second man, later identified as Mallet, appeared to be a few years
younger.  He was shorter and smaller,
about five feet, nine inches tall, and darker-skinned, wearing black pants and
a white t-shirt.  Both men had covered
their heads with du-rags and tied bandanas over their faces, so that only their
eyes and the tops of their ears were exposed. 


Stepney heard Butler say, “Sir,
we’re closed,” then Butler fell to the floor and screamed for Stepney.  Stepney turned and saw one of the men coming
toward her.  She headed for the door, but
the men intercepted her, and she fell to the floor.  The larger man held Stepney from behind while
Mallet held a knife to her throat and ordered her not to move.  Then, the larger man brought Stepney to the
cash registers and told her to give him the cash.  Stepney unlocked the registers, which held a
little more than $200.  The man demanded
more cash and ordered her to open the store safe.  When Stepney informed him it would take fifteen
minutes to open the safe, the man grabbed the cash from the registers and he
and Mallet fled.  Stepney ran up to the
window.  She noted that the men left in a
black four-door Saturn sedan and wrote down its license plate number.  

Stepney called her manager and the
police.  When the officers arrived, they
interviewed Stepney and Butler separately, and then watched the store security
video with them.  In the meantime, officers
traced the black Saturn’s license and registration to Simon’s mother.  A patrol officer located the car at a nearby
apartment complex and found Simon squatting at the back of the car in the
process of removing the license plate.  

A few weeks later, the police
contacted Stepney and asked her to view a live line-up.  In addition to Mallet, who by then was in
custody, the investigating officer selected five men from the jail population to
participate in the line-up.  Like Mallet,
they were all dark-skinned black men, but they varied in age, height and weight,
ranging from seventeen years old to thirty-two years old, five feet, three
inches tall to five feet, eleven inches tall, and 125 pounds to 190
pounds.  Stepney quickly identified the
last man in the line-up, Mallet, as the man who held the knife to her throat.  

Stepney had seen Mallet in the
store before.  She did not know his name,
but knew that he was a friend of Butler. 
He and Simon regularly gave Butler rides to work before she got her own
car.  During the investigation, Butler
eventually admitted that she knew of the men’s plan to rob the store and
cooperated with the State at trial.  

Out-of-Court Identification

I.       Standard
of review

Mallet contends that the trial
court erred in admitting evidence of Stepney’s out-of-court identification of him.
 Specifically, he contends that the
identification process was overly suggestive. 
We apply a de novo standard of review to determine whether an
identification procedure was so impermissibly suggestive that it gave rise to a
very substantial likelihood of misidentification.  Sierra v.
State, 266 S.W.3d 72, 79 (Tex. App.—Houston [1st Dist.] 2008, pet. ref’d).  The Due Process Clause of the Fourteenth
Amendment of the United States Constitution protects an accused from the
admission of a pretrial identification into evidence if it is “so suggestive
and conducive to mistaken identification that subsequent use of that
identification at trial would deny the accused due process of law.”  Barley
v. State, 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995). When challenging the
admissibility of a pretrial identification, an accused has the burden to show,
based on the totality of the circumstances and by clear and convincing
evidence, that (1) the pretrial identification procedure was impermissibly
suggestive and (2) it created a substantial likelihood of irreparable
misidentification.  Id.  Under the second step, “reliability
is the linchpin” in determining the admissibility of identification testimony.  Manson
v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253 (1977).

II.      Analysis

Mallet contends that the live
line-up was impermissibly suggestive because the physical characteristics of the
other five participants were so dissimilar from the description given by
Stepney that Mallet was the only
participant who came close to the description. 
“‘A lineup is considered
unduly suggestive if other participants are greatly dissimilar in appearance
from the suspect.’”  Brown v. State, 29 S.W.3d 251, 254 (Tex. App.—Houston [14th Dist.]
2000, no pet.) (quoting Withers v. State,
902 S.W.2d 122, 125 (Tex. App.—Houston [1st Dist.] 1995, pet. ref’d)).  A suspect may be greatly dissimilar in
appearance from the other participants because of his distinctly different
appearance, race, hair color, height, or age.  Id.  All the individuals, however, need not be
identical; neither due process nor common sense requires such exactitude.  Buxton
v. State, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985).  Minor discrepancies between lineup
participants do not render a line-up impermissibly suggestive.  Brown,
29 S.W.3d at 254; see Buxton, 699
S.W.2d at 216 (holding that height range from five feet, nine inches to six feet,
two inches and weights ranging from 175 to 210 pounds, in different-colored
shirts and only two of whom shared defendant’s skin tone did not render six-man
lineup impermissibly suggestive); Withers
v. State, 902 S.W.2d at 125) (concluding that lineup was not impermissibly
suggestive where defendant was thirty-nine years old, 5'8" tall, weighing
160 pounds, and clean shaven at time of his identification; witness’s
description was of person 5'6" to 5'7" in height, 150 to 160 pounds,
and thirty to thirty-five years of age, and four other persons in lineup ranged
in age from twenty-one to forty-one, in height from 5'9" to 6'1", and
in weight from 155 to 205 pounds; two had beards, and others—including defendant—were clean shaven).

Here, the lineup contained men from
seventeen years old to thirty-two years old, five feet, three inches tall to
five feet, eleven inches tall, and 125 pounds to 190 pounds.  Mallet was not the shortest or the slightest
person in the lineup.  We do not find
that the physical characteristics of the other lineup participants were so
greatly dissimilar from Mallet that the lineup violated his due process rights.

In any event, the record contains
other support for admitting Stepney’s identification of Mallet at trial.  Even if an out-of-court identification
procedure is impermissibly suggestive, an in-court identification may still be
admitted “as long as the record reveals that the witness’ prior observation of
the accused was sufficient to serve as an independent origin for the in-court
identification.”  Jackson v. State, 657 S.W.2d 123, 130 (Tex. Crim. App. 1983).  In evaluating whether a lineup gave rise to
the substantial likelihood of irreparable misidentification, we consider the
factors identified in Neil v. Biggers,
409 U.S. 188, 93 S. Ct. 375 (1972), weighing them against “the corrupting
effect of any suggestive identification procedure in assessing reliability
under the totality of the circumstances.”  Loserth
v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998) (citing Biggers, 409 U.S. at 199, 93 S. Ct. at
382–83).  These factors include: (1) the
opportunity of the witness to view the criminal at the time of the crime; (2) the
witness’s degree of attention; (3) the accuracy of the witness’s prior
description of the criminal; (4) the level of certainty demonstrated by the
witness at the confrontation; and (5) the length of time between the crime and
the confrontation.  Id.  We review the
application of these factors under a de novo standard.  Id.

With respect to Stepney’s
opportunity to view the robber during the crime, Mallet points out that the
robbery was completed in only a few minutes, and the robbers covered their hair
and faces.  While this is true, the
record also shows that Stepney watched the security video before viewing the
lineup, giving her more time to study each individual’s physical
characteristics and mannerisms under less emergent conditions.  This additional study prior to the lineup of
the physical shape and movement of the perpetrator would aid her in serving as
an independent origin for the in-court identification.  

Stepney was able to give only a
general description of the perpetrator immediately after the robbery, but she
showed the presence of mind to head to the front of the store after the robbers
left to see them get into their car and note the car’s appearance and plate
number before they left.  Also, the
police officer overseeing the live lineup testified that, on viewing Mallet in
the lineup, Stepney had an immediate emotional reaction and promptly identified
him as one of the participants in the robbery. 
This reaction is consistent with the recognition that she had previously
seen Mallet with Butler numerous times at the store, and supports a sufficient
independent basis for her in-court identification.  Thus, we hold that the trial court did not err
in admitting the in-court identification.

Conclusion

We hold that the trial court did
not err in admitting the in-court identification of Mallet as a participant in
the robbery.  We therefore affirm the
judgment of the trial court.

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.

Do
not publish.  Tex. R. App. P. 47.2(b).