**Affirmed and Memorandum Opinion filed January 5, 2012.**



In The

# Fourteenth Court of Appeals

———————————————

## NO. 14-10-00460-CR

———————————————

**JEFFERY BALLAH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 1198313**

## MEMORANDUM OPINION

A jury convicted appellant Jeffery Ballah of the first-degree felony of aggravated robbery with a deadly weapon. The jury assessed punishment at twelve years' imprisonment. On appeal, appellant contends that the trial court erred in overruling his objection to an allegedly suggestive pretrial photograph identification, which in turn allegedly tainted the in-court identification of appellant in violation of his due-process rights guaranteed by the Fourteenth Amendment of the United States Constitution. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of January 1, 2009, Victor Chea, his parents, his aunt, and his family arrived at his parents' house after a dinner celebrating his father's birthday.  As Victor's parents and wife were exiting the vehicle, appellant and two other men approached them.  Appellant pulled the hood from his jacket over his head as he approached, and then pulled out a handgun, pointing it at Victor's father's head.  One of the other men pointed his handgun at Victor's mother.  The men demanded Victor's mother's purse, and when she would not turn it over appellant snatched it from her.  The three men then ran back across the street to their car and drove off.

Victor followed the assailants' car through the neighborhood in an attempt to get the assailants' license plate information.  As Victor chased the vehicle, appellant held a handgun out the window, at which point Victor ducked down and hit the assailants' car.  The collision caused the assailants' car to crash through an iron gate and into a hair salon.  After the assailants' car crashed, three males and two females exited the vehicle and fled the scene.  Victor drove around the neighborhood and saw one of the females running through a field.  He approached her, told her to stop, and then detained her with the help of a nearby security guard until police arrived.

Either five or six days later, [1] Victor, his mother, his father, and his wife all went to the police station for a photographic identification.  Each family member was given an instruction sheet—which they initialed and signed—that told them how the photographic lineup would work, that they "should not conclude or guess that the photographs contain a picture of the person who committed the crime," and that they were "not obligated to identify anyone."  Each family member was then independently shown a photo array

---

[1] Apparently because it was shortly after the New Year, both Victor and his wife dated the photographic identification as 2008 instead of 2009.  They also both dated the forms "1/6/08"—though Victor's wife marked over the "6" to change it to a "7"—whereas both of Victor's parents dated the forms "1/7/09."

containing six pictures of different black males. Each of the four family members independently identified appellant's photograph from the lineup.

During the trial, Victor Chea, his wife, his mother, and his father all identified appellant in court as the man who had stolen Victor's mother's purse at gunpoint. The female who Victor apprehended also testified that appellant robbed the family at gunpoint. Blood that was almost certainly appellant's was found on the passenger airbag of the assailants' car. A high school diploma with appellant's name on it was found in the backseat of the assailants' car. Finally, the assailants' car was titled in appellant's father's name. Appellant was convicted and sentenced to twelve years' imprisonment, and filed a timely appeal.

## II. ANALYSIS

In the sole issue presented, appellant argues that the trial court erred by permitting the State to introduce evidence concerning a photographic lineup over his objection. Appellant alleges that the photographic lineup was impermissibly suggestive; that it tainted the in-court identifications of appellant; and that it therefore served to improperly influence the jury, effectively denying appellant the due-process rights guaranteed him by the Fourteenth Amendment of the United States Constitution.

At trial, the following discussion took place concerning the photo array in which appellant appeared:

> [APPELLANT]: The first page is just an instruction page. The second page is the photo. I'm going to object to the second page because I don't think—I think that's too much suggestion. You've got one picture in Picture No. 5 of someone who appears to have electrodes on him. I don't see in any way where these people are remotely similar other than the fact they are black males. I think clearly the defendant's picture in here it's fundamentally different than everybody else's picture. You've got one black male who's much darker in complexion. That's Picture No. 6. You've got Picture No. 5, which is a picture of somebody with a—censors or something like he's been in surgery.

3

[THE STATE]: Your Honor—

[APPELLANT]: Can I finish, please?

[THE STATE]: This is a motion to suppress, this isn't an objection based on—

[APPELLANT]: I can make the objection, Your Honor, in front of the jury with regard to suggestion. That is not a true statement. I can do it both ways.

THE COURT: Go ahead.

[APPELLANT]: With regard the picture [sic] in State's Exhibit No. 4, it's a much fairer complexion, it's a much fairer picture. It's a lighter picture actually. The other two pictures of 1 and 2, are not remotely similar to the picture in No. 3. That is my objection to the second page. It's suggestive, it's not in fact representative of anything close to defendant. I think the defendant is clear, distinctive as a result in this picture.

. . .

THE COURT: The specific objections on page 2 is [sic] that they are all dissimilar and so on. Well, it's true. They're all dissimilar. Only two have T-shirts, white T-shirts on, one has a black T-shirt, one has no shirt on—shirts.

The record will also reflect that the person allegedly standing on the street that approached the defendant's father on the sidewalk, he was wearing light clothes and a hoodie. So this is in no way suggestive in that way.

As far as the pictures themselves, you suggested all different backgrounds on the walls. They all appear to be African American males, they all have—appear to be—have short hair, all appear to have slight facial hair. And the objection as to page 2 is overruled, and the objection as to page 3 is overruled at this time.

Even though no pretrial motion to suppress was filed, appellant properly preserved error by objecting to the photo array at trial. *See Manzi v. State*, 56 S.W.3d 710, 715 n.2 (Tex. App.—Houston [14th Dist.] 2001) ("However, a motion to suppress is merely a specialized pretrial objection. The accused retains his right to raise any appropriate

4

objection at trial where he can, at that time, confront and cross-examine the witness."), *aff'd*, 88 S.W.3d 240 (Tex. Crim. App. 2002). However, appellant did not timely object to any of the witnesses' in-court identifications, instead objecting only to the pretrial photographic identification. The failure of the appellant to complain or object in the trial court to the in-court identifications waives any complaint regarding the in-court identifications on appeal. *See Perry v. State*, 703 S.W.2d 668, 670, 673 (Tex. Crim. App. 1986). We therefore consider only appellant's arguments concerning the validity of the pretrial photographic identification.

The admissibility of an identification is a mixed question of law and fact that the appellate court reviews de novo. *See Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998); *Brown v. State*, 29 S.W.3d 251, 254 (Tex. App.—Houston [14th Dist.] 2000, no pet.). A pretrial identification procedure may be so unnecessarily suggestive and conducive to mistaken identification that to use that identification at trial would deny the accused due process of law. *Neil v. Biggers*, 409 U.S. 188, 196, 93 S. Ct. 375, 380, 34 L. Ed. 2d 401 (1972); *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995). Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968). Therefore, the reviewing court employs a two-step analysis, determining whether the pretrial procedure was impermissibly suggestive, and if so, whether the suggestive pretrial procedure gave rise to a very substantial likelihood of irreparable misidentification. *Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993); *Santos v. State*, 116 S.W.3d 447, 451 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). A finding that a challenged pretrial identification procedure was not in fact impermissibly suggestive obviates the need to determine whether the identification created a substantial likelihood of misidentification. *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).

Either the manner or the content of a pretrial identification procedure may render the identification impermissibly suggestive. *Santos*, 116 S.W.3d at 451. A lineup is considered unduly suggestive if other participants are greatly dissimilar in appearance from the suspect. *Brown*, 29 S.W.3d at 254. A suspect may be greatly dissimilar in appearance from the other participants because of his distinctive appearance, race, hair color, height, or age. *Id.* However, minor discrepancies between lineup participants will not render a lineup impermissibly suggestive, and the participants in a lineup need not be identical to satisfy the requirements of due process. *Id.*

This court has reviewed the challenged photo array, and we conclude that it was not impermissibly suggestive. The photo array consists of six black males with similar features. As noted by the trial judge, all six men have short hair. It is not possible to determine the heights of the individuals from the photographs, and therefore height does not distinguish appellant. Nothing about appellant's clothing differentiates him, and he is not wearing the attire that the witnesses described him in on the night of the offense. With the exception of appellant and another male wearing plain white T-shirts, all four other men are wearing different clothing, including one who is not wearing a shirt. All six pictures were taken from the front, and all six were taken against a plain background. The background colors are slightly different, but there is nothing to single out appellant's photograph. Some photographs are darker than others, but, once again, nothing about the darkness of the photographs differentiates appellant from the other men pictured. *See Barley*, 906 S.W.2d at 33 (differences in backgrounds between photographs was not impermissibly suggestive).

Further, the photographic identification was properly administered. The police officers provided each witness a form explaining the photographic identification procedure. It was explained in the forms that (1) the witnesses should not presume that the person who committed the crime was included in the photos, (2) the witnesses were not obligated to identify anyone from the photos, and (3) it was just as important to clear

innocent parties as it was to identify the guilty party. Each witness initialed and signed the statements indicating that he or she understood the directions. Finally, each witness testified that he or she viewed the photo arrays individually—not with the other members of their family—and that the police officer did not indicate whom, if anyone, the witness should identify.

Because we hold that the photographic lineup was not impermissibly suggestive in either content or form, we need not examine the second prong of the test, i.e., whether any suggestive pretrial procedure gave rise to a very substantial likelihood of irreparable misidentification. *See Delk*, 855 S.W.2d at 706. Accordingly, we overrule appellant's sole issue, and we affirm the trial court's judgment.


/s/     Tracy Christopher
        Justice


Panel consists of Chief Justice Hedges and Justices Seymore and Christopher.

Do Not Publish — TEX. R. APP. P. 47.2(b).