Affirmed
and Memorandum Opinion filed September 15, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NOS: 14-08-00434-CR 

         14-08-00546-CR

____________

 

LEONARD TYRONE TEAL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 179th
District Court

Harris County, Texas

Trial Court Cause No. 1091458,
1091459

 



 

M E M O R A N D U M   O P I N I O N 








This is a consolidated appeal from two separate trials where
appellant, Leonard Tyrone Teal, was found guilty by two separate juries of two
felony offenses of aggravated robbery.  In trial court cause number 1091458,
the jury assessed punishment at forty years= confinement in the Institutional
Division of the Texas Department of Criminal Justice.[1] 
In trial court cause number 1091459, the jury assessed punishment at
ninety-nine years= confinement in the Institutional Division of the Texas
Department of Criminal Justice.[2]  See Tex.
Penal Code Ann. ' 29.03 (Vernon 2003).  On appeal from the conviction of the
September robbery, appellant contends the trial court erred in (1) denying his
motion to suppress pretrial line-up identification, (2) admitting evidence of a
similar robbery alleged to have been committed by appellant, and (3) admitting
evidence of cocaine found in appellant=s vehicle at the time of his arrest. 
On appeal from the conviction of the October robbery, appellant contends the
trial court erred in (1) denying his motion to suppress pretrial line-up
identification, (2) admitting evidence of a similar robbery alleged to have
been committed by appellant, and (3) admitting evidence of illegal contraband
found on his person and in his vehicle at the time of his arrest.  Finding no
reversible error, we affirm.  

Factual and Procedural Background








On September 17, 2006, Darwing Flores was working as a shift
supervisor at a CVS pharmacy on Westheimer and Eldridge in Houston, Texas. 
Between 9 and 10 p.m., a customer asked Flores to open a locked watch case for
him so he could look at some of the watches.  Flores went to the manager=s office to retrieve the watch case
key and was closely followed by the customer.  As Flores entered the office,
the customer pulled out a black handgun, pointed it at the back of Flores=s head, and told Flores to give him
all the money in the safe and if Flores did not cooperate he would hurt him. 
Flores emptied the safe and gave the customer, now robber, all the money. 
While Flores was emptying the safe, the robber told Flores he was from
Louisiana, had lost everything, and would only hurt Flores if necessary.  After
taking the money, the robber made Flores lie down on the floor and then tied
Flores=s hands together with a telephone
cord, tied his feet together with a necktie, and gagged him with a piece of
paper.  After waiting until he heard the robber leave the store, Flores tore
through the phone cord and contacted the police.  Flores described the robber
to the police as a five foot seven inch tall African-American male wearing a
black hat, white shirt, and blue pants. 

The day after the robbery, Houston Police Officer Catherine
Truhan went to the CVS pharmacy to take fingerprints from some of the items the
robber handled.  Officer Truhan lifted fingerprints from the watch case and
collected a piece of paper that was allegedly used to gag Flores.  Truhan sent
the piece of paper and prints she lifted from the watch case to the latent
print lab for further processing.  Houston Police Officer Jimmy Schraub
testified he examined the prints lifted from the watch case and those on the
piece of paper against fingerprints he lifted from the defendant=s table during trial.  Officer
Schraub testified none of the prints lifted from the watch case matched
appellant=s fingerprints.  He did determine, however, appellant=s right thumb print and two partial
palm prints matched those found on the piece of paper taken from the office of
the CVS pharmacy.  The print matches found on the paper were entered into
evidence in both trials.








Approximately one month later, on October 22, 2006, Sheree
Smith was working as a shift supervisor during the closing shift at a CVS
pharmacy at the corner of  Bissonnett and Wilcrest in Houston, Texas.  A customer
asked Smith if she could open a locked case containing digital camera memory
cards.  Smith opened the case, gave the customer the memory card and answered a
few of his questions.  Smith then returned to her office and carried on with
her work.  Approximately two minutes later, she was called out of her office
again to help some other customers.  After helping the other customers, Smith
returned to her office.  While unlocking the door to her office, the customer
who had earlier asked about the digital camera memory card approached Smith and
demanded she open the door to the office.  Smith testified she opened the door
because the customer raised his shirt and showed her the handle of a gun in his
waistband.  Once they were in the office, the customer removed the gun from his
waistband, pointed it at Smith and ordered her to give him the money from the
cash drawers sitting on the desk.  Smith found an envelope to hold the money
and both she and the customer, now robber, put the money in the envelope.  While
they were in the office, the robber told Smith he was from Louisiana and he did
not have anything to lose.  The robber took the envelope of money and tied
Smith=s hands together with a telephone
cord.  After waiting for the robber to leave the store, Smith untied herself
and called the police.  Smith told the police the robber stood around five feet
six or seven inches tall, wore a white ball cap, sunglasses, a black shirt, had
salt and pepper sideburns, and a distinctive voice.

Eventually, the Houston Police Department learned of a
license plate number connected with another, similar CVS robbery occurring
around the same time period.  The police connected this license plate with a
2006 black Dodge Magnum.  On November 3, 2006, Houston Police Officer Michael
Lombardo conducted a traffic stop on a 2006 black Dodge Magnum.  Officer
Lombardo testified appellant was driving the vehicle and his cousin, Andre
Teal, was sitting in the passenger seat.  In both trials, Officer Lombardo
testified that while searching appellant=s vehicle he found a gun, a CVS bag
containing approximately $3,600 cash, and a social security card in appellant=s name.  Additionally, during the 
trial for the September robbery, the prosecutor elicited from appellant that he
also had 11.4  grams of powder cocaine in his vehicle and less than a gram of
crack cocaine in his pocket when Officer Lombardo pulled his vehicle over and arrested
him.  








After arresting appellant and his cousin, Officer Lombardo
escorted them to the police station and they participated in a line-up. 
Houston Police Officer Colleen Guidry testified that she selected the
participants for the line-up.  Before compiling the line-up participants,
Officer Guidry called four victims of CVS robberies in the Houston area,
including Darwing Flores and Sheree Smith.  Officer Guidry asked them to come
to the police station for a possible identification of the person who robbed
them.  Three of the four witnesses positively identified appellant as the
robber.  The fourth witness tentatively identified appellant as the robber. 
Officer Guidry testified she included both appellant and his cousin in the same
line-up because both were suspects and there were not enough willing line-up
participants to create two different line-ups.  Officer Guidry admitted it
would have been better to have two separate line-ups because of the discrepancy
in height between appellant and his cousin.  Appellant=s cousin, Andre Teal, is six feet,
one inch tall and weighs 220 pounds, whereas appellant is five feet, seven
inches tall and weighs 175 pounds.  Officer Guidry testified all line-up participants
were African-American, generally were the same size, build, and age, had the
same hair color, and all wore civilian clothing.  Darwing Flores and Sheree
Smith both testified there was nothing unique or different about appellant to
suggest appellant was the person the police suspected to be the robber.  A
video recording of the line-up was introduced into evidence in both trials.  

In trial on the September incident appellant was convicted of
aggravated robbery and sentenced to forty years= confinement.  In trial on the
October incident appellant was convicted of aggravated robbery and sentenced to
ninety-nine years= confinement.  Appellant timely appealed both his convictions.     


Discussion

In his appeal from the judgment on the September robbery,
appellant contends the trial court erred when it denied appellant=s motion to suppress the pretrial
line-up identification and when it admitted evidence of extraneous offenses
during the guilt/innocence phase of his trial.  In his appeal from the judgment
on the October robbery, appellant contends the trial court erred when it denied
his motion to suppress the pretrial line-up identification and when it admitted
evidence of extraneous offenses during both the guilt/innocence and punishment
phases of his trial.  Finding no reversible error we affirm the decisions of
the trial courts.  

I.         Did the trial court err in
denying appellant=s motion to suppress the pretrial line-up
identification? 

In the first issue in both of his briefs, appellant contends
the pretrial line-up was impermissibly suggestive because there was a Ahuge discrepancy@ between the physical characteristics
of the participants in the line-up. 

 

 








A.       Standard
of Review 

In reviewing the trial court=s decision on the admissibility of a
pretrial line-up identification, we defer to the trial court=s rulings on mixed questions of law
and fact if they turn on the credibility and demeanor of witnesses.  Carmouche
v. State, 10 S.W.3d 323, 327B28 (Tex. Crim. App. 2000).  However,
we review de novo mixed questions of fact and law that do not turn on an
evaluation of credibility and demeanor.  Loserth v. State, 963 S.W.2d
770, 772 (Tex. Crim. App. 1998).  In this case, the question of whether a
pretrial identification procedure was impermissibly suggestive is a mixed
question of law and fact that does not turn on an evaluation of credibility and
demeanor.  See id. at 773.  Accordingly, we apply a de novo
standard of review.  

B.       Analysis


A pretrial identification procedure may be so suggestive and
conducive to mistaken identification that subsequent use of that identification
at trial would deny the accused due process of law.  Simmons v. United
States, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968); Barley
v. State, 906 S.W.2d 27, 32B33 (Tex. Crim. App. 1995).  We apply a two-step inquiry to
determine whether the trial court erred in denying a motion to suppress a
pretrial identification: (1) whether the pretrial identification procedure was
impermissibly suggestive and, if so, (2) whether the impermissibly suggestive
procedure gave rise to a substantial likelihood of irreparable misidentification
at trial.  Barley, 906 S.W.2d at 33.  An analysis under these steps
requires an examination of the Atotality of the circumstances@ surrounding the particular case and
a determination of the reliability of the identification.  Id.  A
defendant bears the burden of establishing, by clear and convincing evidence,
the pretrial identification procedure was impermissibly suggestive.  Id.
at 33B34.    








First, we review whether the pretrial identification was
impermissibly suggestive.  Id.  Suggestiveness in a line-up may be
created by the manner in which the pretrial identification procedure is
conducted; for example, by police pointing out the suspect or suggesting that a
suspect is included in the line-up.  Id. at 33.  It may also be created
by the content of the line-up itself, if the suspect is the only individual
closely resembling the witness= prior description.  Id. 

A>A line-up is considered unduly
suggestive if other participants are greatly dissimilar in appearance from the
suspect.=@  Brown v. State, 29 S.W.3d
251, 254 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (quoting Withers v.
State, 902 S.W.2d 122, 125 (Tex. App.CHouston [1st Dist.] 1995, writ ref=d)).  A suspect may be greatly
dissimilar in appearance from the other participants because of his distinctly
different appearance, race, hair color, height, or age.  Id.  However,
it is not essential that all the individuals be identical; neither due process
nor common sense requires such exactitude.  Buxton v. State, 699 S.W.2d
212, 216 (Tex. Crim. App. 1985).  Minor discrepancies between lineup participants
will not render a line-up impermissibly suggestive. Brown, 29 S.W.3d at
254.   

Appellant contends his line-up did not contain six people who
were similar enough in their appearances to avoid suggesting to the witnesses
who the police believed to be the offender.  The line-up was composed of six
African-American males ranging from five feet six inches to six feet one inch
tall, weighing between 145 and 250 pounds.  During the suppression hearing,
Officer Guidry testified all of the participants were dressed in civilian
clothing, had generally the same build, same amount of facial hair, similar
hairstyles, and similar complexions.  When viewing the video recording of the
line-up, one can see there are three participants, including appellant, who are
within a shorter height range and three participants within a taller height
range.  Otherwise, the participants all appear to have similar builds, facial
hair, and hairstyles.  








There was nothing about the line-up that singled out
appellant or drew particular attention to him.  We conclude appellant has not
demonstrated by clear and convincing evidence the line-up was impermissibly
suggestive.  See Barley, 906 S.W.2d at 34 (holding line-up was
not impermissibly suggestive where, despite height discrepancies, participants
had similar features and were of similar build); Cienfuegos v. State,
113 S.W.3d 481, 491 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d) (holding line-up was not
impermissibly suggestive where participants had similar facial hair, all were
Hispanic, wore civilian clothes, were of similar age, height and build, with
the exception of one participant who was obviously older and shorter than the
others); compare Brown 29 S.W.3d at 254 (concluding line-up likely rose
to impermissibly suggestive level where there was a great difference between
the heights of the other four participants in the line-up and appellant). 
Because we hold the line-up was not impermissibly suggestive, we need not
address the second step of the inquiry, whether the impermissibly suggestive
procedure gave rise to a substantial likelihood of irreparable
misidentification at trial.  See Page v. State, 125 S.W.3d 640, 647
(Tex. App.CHouston [1st Dist.] 2003, pet. ref=d).  Accordingly we overrule
appellant=s first issue on appeal from both convictions.  

II.        Trial
of the September Robbery

On appeal from the conviction of the September robbery,
appellant contends the trial court erred in admitting evidence of a similar
robbery alleged to have been committed by appellant, and in admitting evidence
of cocaine found in appellant=s vehicle at the time of his arrest.  

A.        Testimony
of Sheree Smith 

Appellant contends the trial court erred by allowing Sheree
Smith to testify about an alleged robbery that occurred in October 2006 at a
CVS store where Smith was working.

1.  Standard of Review 

We review a trial court=s decision to admit or exclude
evidence for an abuse of discretion.  Weatherred v. State, 15 S.W.3d
540, 542 (Tex. Crim. App. 2000).  We will reverse a trial court=s decision to admit or exclude
evidence only when that decision falls outside the zone of reasonable
disagreement.  Id.    

 








2.  Analysis 

Appellant contends the admission of Sheree Smith=s testimony about the October
robbery, during trial of the September robbery, had no relevance other than to
show character conformity, and the danger of unfair prejudice substantially
outweighed its probative value.

Character
Conformity 

 The general rule is the defendant is to be tried only for
the offense charged, not for any other crimes or for being a criminal
generally.  Segundo v. State, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008). 
However, evidence of extraneous acts of misconduct may be admissible if (1) the
uncharged act is relevant to a material issue in the case, and (2) the
probative value of that evidence is not significantly outweighed by its prejudicial
effect.  Id. 

One of the main rationales for admitting extraneous offense
evidence is to prove the identity of the offender.  Id. at 88.  Here,
the theory of relevancy is usually that of modus operandi in which the
pattern and characteristics of the charged crimes and the uncharged misconduct
are so distinctively similar that they constitute a Asignature.@  Id.  No rigid rules dictate
what constitutes sufficient similarities; rather, the common characteristics
may be proximity in time and place, mode of commission of the crimes, the
person=s dress, or any other elements which
mark both crimes as having been committed by the same person.  Id.  But
if the similarities are Ageneric,@ i.e. typical of the crime, they will not constitute a Asignature crime.@  Id.  In order for extraneous
offense evidence to be admissible under a theory of identity, the extraneous
offense must not only be similar to the charged offense, but identity must be a
controverted issue.  See Jones v. State, 587 S.W.2d 115, 117 (Tex. Crim.
App. 1978)   








In this case, appellant placed his identity in issue by
asserting an alibi.  See id. at 119.  Appellant claimed he was suffering
from a spider bite on the date of the offense and was either resting at home with
his girlfriend or was at the hospital.  Appellant=s girlfriend corroborated appellant=s alibi.  Once the issue of identity
has been raised, evidence of extraneous offenses is admissible to prove
identity if there are distinguishing characteristics common to both the
extraneous offense and the offense for which the accused is on trial.  Id.


Here, both offenses occurred at CVS stores in the southwest
side of Houston.  In both incidents the suspect asked a supervisor to open a
locked display case and forced the supervisor into the office with a gun.  The
suspect then demanded that the supervisors give him all the money and forced
the supervisors to place the money into either a bag or envelope.  While the
supervisors handed over the money, the suspect told the supervisors that he was
from Louisiana, had nothing to lose, and did not want to hurt them, but would
if they did not cooperate.  After the supervisors gave the suspect the money,
the suspect tied up their hands with a telephone cord and asked them not to
make any moves until he was out of the store.

We conclude the trial court did not abuse its discretion in
determining there were sufficient similarities in the two robberies to find the
testimony of Sheree Smith relevant to the issue of appellant=s identity.  See Tex. R. Evid.
404(b).  In particular, we hold the statements made by the suspect in the
course of the robberies, the use of a telephone cord to tie up the
complainants, and the distinct way the suspect asked the supervisor to open a
display case, and then forced him or her into the office are sufficiently
unique to constitute a Asignature crime.@  See Burton v. State,
230 S.W.3d 846, 850B51 (Tex. App.CHouston [14th Dist.] 2007, no pet.).  Accordingly, we hold
the extraneous offense was not admitted for the purpose of proving character
conformity as appellant contends, but rather for the permissible purpose of
proving the suspect=s identity.  See id. at 849.

Unfair
Prejudice








Texas Rule of Evidence 403 provides relevant evidence may be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice.  See Tex. R. Evid. 403.  When undertaking a Rule 403
analysis a court must balance (1) the inherent probative force of the proffered
item of evidence along with (2) the proponent=s need for that evidence against (3)
any tendency of the evidence to suggest a decision on an improper basis, (4)
any tendency of the evidence to confuse or distract the jury from the main
issues, (5) any tendency of the evidence to be given undue weight by a jury
that has not been equipped to evaluate the probative force of the evidence, and
(6) the likelihood that presentation of the evidence will consume an inordinate
amount of time or merely repeat evidence already admitted.  Gigliobianco v.
State, 210 S.W.3d 637, 641B42 (Tex. Crim. App. 2006).

First, the extraneous offense, in this case, is highly
probative on the issue of identity because of its similarity to the charged
offense.  See Burton, 230 S.W.3d at 851 (citing Lane v. State,
933 S.W.2d 504, 520 (Tex. Crim. App. 1996)).  Additionally, the evidence was
only introduced after appellant asserted an alibi, thus making the evidence
probative to disprove the appellant=s alibi defense.  See Cruz v.
State, 122 S.W.3d 309, 313 (Tex. App.CHouston [1st Dist.] 2003, no pet.). 
Second, we look at the State=s need for the evidence.  The State had fingerprint evidence
linking appellant to the offense, the testimony of Flores, and the line-up identification
evidence.  However, all of this evidence was called into question by defense
counsel.  Therefore, all the evidence bearing on identity was disputed, thus
elevating the State=s need for extraneous offense testimony.  See Gigliobianco,
210 S.W.3d at 641 (stating Aa proponent=s need for a particular piece of evidence is reduced when the
proponent has other compelling or undisputed evidence to establish the
proposition or fact@) (emphasis added).  








The two above factors are weighed against the remaining four
counterfactors.  See id.  The first counterfactor is whether the
evidence has the potential to impress the jury in an irrational way or suggest
a decision on an improper basis.  Id.  The aggravated robbery testimony
is not so graphic or appalling that it would impress the jury in some
irrational, but indelible way or suggest a decision on an improper basis.  Cf.
Santellan v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (holding the
offense of abuse of a corpse could potentially affect the jury in an emotional
way).  Additionally, the trial court gave a limiting instruction on how the
jury was to use the evidence before the extraneous offense came in.  See
Burton, 230 S.W.3d at 851.  

The second counterfactor refers to a tendency to confuse or
distract the jury from the main issue in the case.  Gigliobianco, 210
S.W.3d at 641.  Evidence that consumes an inordinate amount of time to present
or answer, for example, might tend to confuse or distract the jury from the
main issues.  Casey v. State, 215 S.W.3d 870, 880 (Tex. Crim. App.
2007).  The extraneous offense testimony in this case was presented after all
the evidence of the charged crime was presented.  Additionally, it did not
consume an inordinate amount of time.  The record indicates Smith was the first
of two witnesses to testify on the second and final day of the guilt/innocence
stage of trial; both sides rested by mid-morning.  Eight witnesses testified on
the full day before.  

The third counterfactor asks whether the evidence had any
tendency to mislead the jury.  AMisleading the jury,@ refers to a tendency of an item of
evidence to be given undue weight by the jury that has not been equipped to
evaluate the probative force of the evidence.  Gigliobianco, 210 S.W.3d
at 641.  For example, >scientific= evidence might mislead a jury that is not properly equipped
to judge the probative force of the evidence.  Id.  The nature of the
aggravated offense testimony does not lend itself to artificial weight.  Smith
is not an expert and, furthermore, was subject to cross examination on her
identification.  There is nothing about her testimony that would cause jurors
to improperly rely on her statements.

Finally, we look at whether the evidence would repeat
evidence already admitted.  None of the prior witnesses testified to other
similar CVS robberies, therefore, her testimony was not repetitive of other
evidence already admitted.  After weighing all the factors, we hold the danger
of unfair prejudice did not substantially outweigh the probative value of the
evidence.  Accordingly, we hold the trial court did not err in admitting the
testimony of Sheree Smith in the trial on the September robbery.

 








B.        Cocaine Evidence 

Appellant argues the trial court erred by admitting evidence
that 11.4 grams of powder cocaine were found in appellant=s vehicle at the time of his arrest. 
He contends the evidence of cocaine had no relevance to the robbery and had no
purpose other than to impermissibly show bad character.  Appellant properly
preserved this complaint on appeal by asserting a specific and timely objection
and obtaining a ruling on his objection.  See Wilson, 71 S.W.3d at 349. 


1.  Standard of Review 

The standard of review for error in the admission of evidence
is set forth above in section II. A. 1.  

2.  Analysis 

Before cross-examining appellant, the prosecutor obtained
preliminary rulings outside the presence of the jury.  In particular, the trial
court granted the prosecutor permission to ask appellant whether he was in
possession of any contraband when he was arrested, specifically the cocaine
found in his vehicle.  Appellant objected outside the jury and again when the
question was asked.  The trial court found the evidence admissible because
appellant took the stand and consequently subjected himself to impeachment like
any other witness.  The court stated appellant created the impression he was a
law-abiding citizen and therefore, the cocaine was admissible to rebut such
characterization.  The State asserts a similar argument on appeal.








While it is true a defendant who takes the stand is subject
to impeachment like any other witness, it is also true the impeachment of a
defendant, or any other witness, must comply with the Texas Rules of Evidence. 
See Moreno v. State, 22 S.W.3d 482, 485B86 (Tex. Crim. App. 1999).  The State
cites Texas Rule of Evidence 611(b) for the proposition that a witness may be
cross-examined on any matter relevant to any issue in the case, including
credibility.  Tex. R. Evid 611(b).  The State is correct in this contention,
however, the Texas Rules of Evidence are specific as to what types of evidence
may be used to impeach a witness.  In particular, Rule 608(b) provides in part,
A[s]pecific instances of the conduct
of a witness, for the purpose of attacking or supporting the witness= credibility, other than conviction
of crime as provided in Rule 609, may not be inquired into on cross-examination
of the witness nor proved by extrinsic evidence.@  Tex. R. Evid 608(b).  Appellant=s possession of cocaine is a specific
act and is inadmissible for the purpose of impeachment.[3] 
See Martinez v. State, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000). 
Consequently, the trial court erred by admitting this evidence.

Because we find error, we must now assess whether the error
was harmful.  See Tex. R. App. P. 44.2(b).  A non-constitutional error
that does not affect substantial rights must be disregarded.[4]
 Id.  Appellant argues his substantial rights were affected by the trial
court=s erroneous admission of evidence.  A
substantial right is affected when the error had a substantial and injurious
effect or influence in determining the jury=s verdict.  Haley v. State,
173 S.W.3d 510, 518 (Tex. Crim. App. 2005).  If the error did not influence the
jury, or had but a slight effect, the error is harmless.  Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  








In assessing the likelihood that the jury=s decision was adversely affected by
the error, an appellate court should consider everything in the record,
including any testimony or physical evidence admitted for the jury=s consideration, the nature of the
evidence supporting the verdict, the character of the error, and how the error
might be considered in connection with other evidence in the case.  Morales
v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).  A reviewing court may
also consider the jury instructions, the State=s theory of the case, any defensive
theories, closing arguments, and whether the State emphasized the error.  Id.;
King v. State, 953 S.W.2d 266, 272 (Tex. Crim. App. 1997).  Moreover,
the Court of Criminal Appeals has also stated that evidence of overwhelming
guilt can be taken into consideration in a harm analysis.  See Motilla v.
State, 78 S.W.3d 352, 356B57 (Tex. Crim. App. 2002). 

The primary evidence presented by the State in this case
consisted of a line-up and in court identification of appellant by the
complainant, appellant=s finger prints on a piece of paper gathered at the crime
scene, the testimony of complainant Darwing Flores, and the extraneous offense
testimony of Sheree Smith.  This evidence all strongly pointed to appellant as
the perpetrator of the charged offense.  The defense countered this evidence by
asserting an alibi, which was corroborated only by appellant=s girlfriend, the mother of one of
his children.  Evidence appellant was arrested with cocaine in his vehicle was
elicited from appellant on cross-examination.  Appellant testified the cocaine
belonged to his cousin and he was merely holding it  for him.  After the
cocaine was brought up on cross-examination, it was not mentioned again until
the prosecutor=s closing argument where the prosecutor used it to call into question
appellant=s credibility.  

The chief concern in this instance of improperly admitted
evidence is the potential of the evidence to cause the jury to convict
appellant for character conformity, i.e. he is someone who uses illegal drugs
therefore he must have committed the robbery.  However, we conclude the
overwhelming evidence of guilt, regardless of the improperly admitted cocaine
evidence, would have resulted in a guilty verdict.  See Coleman v. State,
188 S.W.3d 708, 730 (Tex. App.CTyler 2005, pet. ref=d.) (where there was ample evidence
of guilt, an improper jury argument by prosecutor was harmless); Petruccelli
v. State, 174 S.W.3d 761, 769 (Tex. App.CWaco 2005, pet. ref=d.) (where there was more than enough
evidence of guilt, the erroneous admission of a violent videotape was
harmless).  Because the error in admitting evidence appellant had cocaine in
his vehicle at the time of his arrest did not affect appellant=s substantial rights it was harmless;
thus this error  must be disregarded.  See Tex. R. App. P. 44.2(b).  








We affirm the conviction of the September 2006 robbery.  

III.      Trial
of the October Robbery

On appeal from the conviction of the October robbery,
appellant contends the trial court erred in admitting the testimony of Darwing
Flores regarding a similar CVS robbery.  He also complains about the admission
of testimony of two other alleged victims of CVS robberies during the
punishment phase of his trial.  Additionally, he complains the trial court
erred by admitting evidence of illegal contraband found on his person and in
his vehicle at the time of his arrest.

A.        Testimony
of Darwing Flores

In his appeal from the conviction of the October robbery,
appellant not only complains of the admission of extraneous offense evidence
during the guilt/innocence stage, but also to the admission of extraneous
offense testimony brought in by two additional alleged victims during the
punishment stage.  Appellant contends the extraneous offenses had no probative
value and were not sufficiently similar to constitute Asignature crimes.@

Because appellant did not object to the admission of the
additional extraneous offenses during the punishment stage of his trial he has
waived this issue on appeal.[5]  See Wilson
v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).  Consequently, we only
look at appellant=s arguments in light of Darwing Flores=s testimony during the
guilt/innocence stage. Appellant contends the trial court erred by allowing
Darwing Flores to testify about an alleged robbery that occurred in September
2006 at a CVS store where Flores worked.

 

                                                                  








1.  Standard of Review

The standard of review for error in the admission of evidence
is set forth above in section II. A. 1. 

2.  Analysis

Appellant argues the admission of Darwing Flores=s testimony had no relevance other
than to show conformity with bad character and, furthermore, the danger of
unfair prejudice substantially outweighed its probative value.  

Character
Conformity








As mentioned above, an extraneous offense is admissible under
a theory of modus operandi, if the defendant first puts his identity in
issue.  See Segundo, 270 S.W.3d at 85B88.  Identity can be raised by the
defense during cross-examination when the identifying witness is impeached on a
material detail of the identification.  Page v. State, 137 S.W.3d 75, 78
(Tex. Crim. App. 2004).  A material detail simply means a detail that is
relevant to the reliability of the identification.  Id. at 79.  In this
case, defense counsel questioned Smith=s knowledge of firearms in regard to
her identification of the weapon appellant used.  While Smith was on the stand,
defense counsel pointed out that no lights were on in the office when appellant
forced Smith to give him the money, implying Smith=s identification could be faulty.  See
Siqueiros v. State, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985).  Defense
counsel also drew attention to the fact Smith said the most distinctive
identifier about the suspect was his voice, but the suspects in the line-up
were not asked to say anything more than their height and weight.  Moreover,
defense counsel asked Smith whether the suspect had any scars, tattoos, or
other distinctive features.  We hold the cross examination of Smith
sufficiently opened the door to extraneous offense evidence by placing identity
in issue.  Page, 137 S.W.3d at 78B79 (asking A[t]he question of whether defense
counsel=s cross-examination of the victim
raised the issue of identity may be best answered with another question: If it
was not about identity, what was it about?@).  Because identity was placed in
issue, we now turn to whether the extraneous offense is similar enough to the
charged offense to constitute a Asignature crime.@

The extraneous offense testimony of Darwing Flores in the
October robbery trial is nearly identical to his testimony when he was the
complainant in the September robbery trial. By the same token, the testimony of
Sheree Smith as the complainant in the October robbery trial is nearly
identical to her extraneous offense testimony in the September robbery trial. 
Consequently, our analysis on whether the extraneous offense testimony is
similar enough to the charged crime to constitute evidence of a Asignature crime@ would be identical to the above
analysis in the character conformity portion of section II. A. 2. for the
September robbery.  In light of that discussion, we hold the extraneous offense
testimony of Darwing Flores is similar enough to the charged offense in the
October robbery to be considered testimony about a Asignature crime.@ See Segundo, 270 S.W.3d at
88.   

Unfair
Prejudice

The extraneous offense testimony in the trial of the October
robbery was presented at a different point in trial and identity was placed in
issue by impeachment of an eyewitness identification, rather than by appellant=s alibi, as was done in the trial of
the September robbery.  Therefore, our unfair prejudice analysis is not
identical and must be independently scrutinized.  Nonetheless, we still weigh
the same six factors mentioned in the September robbery analysis.[6]









First, we look to the probative value of the evidence.  Here,
Flores=s testimony was probative on the
issue of appellant=s identity after it was called into question by defense counsel=s cross-examination of complainant
Smith.  Thus, Flores=s testimony was used to support Smith=s testimony on identification and
therefore was highly probative.  Next, we address the proponent=s need for the evidence.  The weight
of the second factor will be reduced where the proponent has other compelling
or undisputed evidence to establish the proposition or fact.  Gigliobianco,
210 S.W.3d at 641.  Bearing on  the issue of identity, we have Sheree Smith=s testimony, line-up and in-court
identification, and the appellant=s fingerprints at the scene of the
crimeBall of which were called into
question by defense counsel during trial.  Therefore, the need for extraneous
offense testimony is high because all other identification evidence is disputed.








We weigh the two factors above against the remaining four
counterfactors.  First, the extraneous offense testimony of Smith does not have
the tendency to suggest a decision on an improper basis, such as an emotional
reaction to graphic evidence.  See Bargas v. State, 252 S.W.3d 876, 893
(Tex. App.CHouston [14th Dist.] 2008, no pet.) (where evidence was not lengthy or
graphic it is not likely the jury was impressed in some irrational or indelible
way).  Second, Flores=s testimony did not consume so much time it would have
confused the jury about which crime the defendant was being charged.  He was
only one of nine witnesses to testify and his testimony lasted no longer than
the complainant=s own testimony.  Gigliobianco, 210 S.W.3d at 641
(evidence that consumes an inordinate amount of time to present or answer, for
example, might tend to confuse or distract the jury from the main issues).  The
third factor is whether the evidence misleads the jury or would cause undue
delay.  A jury would be unlikely to give Flores=s testimony any improper weight
because he is neither an expert, nor did he represent that he had any superior
knowledge that could potentially lead a jury to place more weight on his
testimony.  See id.  Lastly, Flores=s testimony was not cumulative and
did not cause undue delay.  No victims of other similar CVS robberies testified
during the guilt/innocence stage of the trial.  See id.  After balancing
all of the factors, we conclude the probative value of Flores=s testimony was not substantially
outweighed by the danger of unfair prejudice.  Consequently, we hold the trial
court did not err in admitting the testimony of Darwing Flores in the trial of
the October robbery.  

         B.      Illegal Contraband Evidence

In his appeal of the conviction of the
October robbery, appellant first contends the trial court erred in admitting a
black handgun found in his vehicle during the guilt/innocence stage.  Appellant
waived this complaint by failing to object to the introduction of this evidence
at trial.  Wilson, 71 S.W.3d at 349.  When the State introduced the
handgun through the testimony of Officer Michael Lombardo, appellant not only
failed to object, but stated AJudge, I have no objection.@  Next, appellant
contends the trial court erred by admitting evidence of the crack cocaine found
on his person and the handgun and cocaine found in his vehicle during the
punishment stage of his trial.  Appellant also waived these complaints on
appeal.  Appellant failed to object, and in some instances specifically stated
he had no objection to the introduction of this evidence.  Id. 
Accordingly, appellant=s second issue on appeal from the trial of
the October robbery is overruled. 

We affirm the conviction of the October
2006 robbery.

Conclusion

Having found no reversible error, we affirm the
judgments of the trial courts.  

 

 

/s/      John S. Anderson

Justice

 

Panel consists of Justices Anderson, Guzman, and
Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  This cause number will be referred to as the
September robbery.





[2]  This cause number will be referred to as the October
robbery.





[3]  At the time of trial, appellant had not been
convicted of any crime arising out of his possession of cocaine, therefore
Texas Rule of Evidence 609 does not apply. 





[4]  The introduction of this evidence does not rise to
the level of constitutional error.  See Potier v. State, 68 S.W.3d 657,
662B63 (Tex. Crim. App. 2002) (AErroneous evidentiary rulings rarely rise to the level
of denying fundamental constitutional rights . . .@).  





[5]  Appellant=s
objection to the admission of the extraneous offense evidence during the
guilt/innocence stage of the trial on the October robbery was specifically to
the testimony of Darwing Flores; at the punishment stage the extraneous
offenses were brought in by two different complainants without objection.





[6]   (1) The inherent probative force of the proffered
item of evidence along with (2) the proponent=s need for that evidence against (3) any tendency of the evidence to
suggest a decision on an improper basis, (4) any tendency of the evidence to
confuse or distract the jury from the main issues, (5) any tendency of the
evidence to be given undue weight by a jury that has not been equipped to
evaluate the probative force of the evidence, and (6) the likelihood that
presentation of the evidence will consume an inordinate amount of time or
merely repeat evidence already admitted.  Gigliobianco, 210 S.W.3d at
641B42 (Tex. Crim. App. 2006).